# EXHIBIT C

```
1   2745
    DOMINICA C. ANDERSON
2   SBN: 2988
    LUCAS M. GJOVIG
3   SBN: 8550
    DUANE MORRIS LLP
4   100 NORTH CITY PARKWAY, SUITE 1560
    LAS VEGAS, NV 89106-4617
5   TELEPHONE: (702) 868-2600
    FACSIMILE: (702) 385-6862
6

7   NEIL W. BASON (Pro Hac Vice Application Pending)
    DUANE MORRIS, LLP
8   One Market Plaza, Spear Tower, Suite 2200
    San Francisco, CA 94105
9   Telephone: (415) 957-3000
    Facsimile: (415) 957-3001
10

11  Attorneys for Plaintiff
    WBCMT 2006-C27 PLUMAS STREET, LLC
```

**FILED**
JUN 07 2010  3:43 p.m
HOWARD W. CONYERS, CLERK
By: [signature]
DEPUTY CLERK

IN THE SECOND JUDICIAL DISTRICT COURT OF
THE STATE OF NEVADA IN AND FOR THE
COUNTY OF WASHOE

| | |
|---|---|
| WBCMT 2006-C27 PLUMAS STREET, LLC a Nevada Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>TEE INVESTMENT COMPANY, LIMITED PARTNERSHIP, a Nevada limited partnership; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: CV10-01355<br><br>DEPT. NO.: 1<br><br>Hearing: June 7, 2010<br>Time:    9:00 a.m.<br>Judge:   The Honorable Janet Berry<br>         75 Court Street, Dept. 1<br>         Reno, Nevada |

## ORDER APPOINTING RECEIVER AND
## GRANTING PRELIMINARY INJUNCTION

This matter came before the Court upon the Motion for an Order Appointing Receiver filed by plaintiff WBCMT 2006-C27 PLUMAS STREET, LLC ("Plaintiff") for the appointment of a

receiver for certain real and personal property located at 6155 Plumas Street, in the City of Sparks, Washoe County, Nevada (the "Real Property Collateral" or "Property") under the authority of NRS § 107.100 and other applicable law. The Court has reviewed the *Ex Parte* Application for an Order Appointing Receiver, the supporting declarations, the Verified Complaint filed herein, and other relevant documents.

The Court finds and concludes as follows:

The appointment of a receiver is necessary: (a) to take possession of, protect, and conserve the Real Property Collateral, which consists of an apartment complex; (b) to collect any and all rents, issues, profits or other income arising from or related to the Real Property Collateral and apply said rents to property tax payments, insurance payments, and debt service payments to Plaintiff; (c) to take control of all accounts and all books and records relating to the Real Property Collateral; (d) to take necessary steps in the normal and ordinary course of managing, operating, and maintaining the Real Property Collateral; (e) to issue Receiver Certificates as necessary to manage, operate and maintain the Real Property Collateral; and (f) to perform other duties as required by the Court.

Further, a preliminary injunction is necessary in order to (a) ensure the turnover of the Real Property Collateral and all related accounts and records to the receiver; (b) prevent waste on the Real Property Collateral; (c) prevent the diversion or misuse of the rents or other income from the Real Property Collateral; (d) prevent interference with the discharge of the receiver's duties; (e) prevent the unauthorized sale, transfer, encumbrance, disposition or concealment of the Real Property Collateral without a prior Court order; and (f) prevent impairment of the preservation of the Real Property Collateral or Plaintiff's interest in the Real Property Collateral.

NOW, THEREFORE, for good cause appearing,

IT IS HEREBY ORDERED that:

1. <u>Receiver</u>. Mr. Terrence S. Daly ("Receiver") is appointed as receiver to take possession of the Real Property Collateral described in **Exhibit 1** hereto.

2. <u>Receiver's oath and bond</u>. The Receiver shall promptly execute and file a Receiver's oath. The Receiver is not required to post a bond with the Clerk of Court.

3. <u>Receiver's fees</u>. The Receiver may charge for the Receiver's services no more than

1   $250.00 per hour.

2   4.   <u>Management company</u>. The Receiver may employ the management company Holland Residential, LLC or its affiliate Holland Partner Group for asset management services. Management company fees shall be no more than 3.5% of gross rental income, subject to a minimum of $3,500 per month and a start up fee of $5,000.

    5.   <u>Disclosure</u>. The Receiver shall immediately disclose to all parties any financial relationship between the Receiver and any company hired to assist in the management of the Real Property Collateral.

    6.   <u>General duties</u>. After appointment, the Receiver:

    a.   shall take possession of and manage the Real Property Collateral,

    b.   shall collect the rents, issues, profits, and income from the Real Property Collateral,

    c.   shall care for the Real Property Collateral and may incur the expenses necessary for that care,

    d.   may change the locks on the Real Property Collateral, and

    e.   may open mail addressed to Defendant or concerning the Real Property Collateral or the Additional Property.

    7.   <u>Possession of Property and Turnover of Information</u>. Subject to the provisions of paragraph 32, and without limiting the generality of the provisions of the immediately preceding paragraph of this Order, the Receiver upon appointment shall promptly take possession of, and Defendant shall turnover the following:

    a.   <u>Property</u>: the Real Property Collateral, and all Defendant's assets, files, papers, records, documents, keys, monies, checks, securities, books of account, insurance policies, service contracts, permits, licenses, plans, appraisals, engineering and environmental reports, utility deposits and/or bonds, security deposits, rent rolls, and all other property, real, personal, or mixed relating to the Real Property Collateral, including without limitation, any rents and security deposits previously received with respect to the Real Property Collateral to the extent that any such sums are

in any accounts maintained with respect to the Real Property Collateral (collectively, the "Additional Property");

      b.     <u>Property Information</u>: a current rent roll, an aged delinquency list of past due rents, a list of major maintenance equipment, a list of employees (including but not limited to name, job title, pay rate and benefits), a list of all telephone numbers associated with the Property, information concerning any alarm system (including but not limited to certifications, passwords and codes), a list of utility information (including but limited to company names and account/meter numbers, and information on any deposits being held by the utility company), information regarding current real estate tax bills and any assessment notices (including but not limited to copies of such bills and notices), a list of vendors and an open invoice list, accounting or other software used in the management and/or operation of the Property (including but not limited to passwords and codes and employee social security numbers), and any other information relating to the management or sale or other disposition of the Property (the "Property Information"); and

      c.     <u>Housing Assistance Information</u>: without limiting the generality of the foregoing, all documents related to government assistance housing programs (the "Housing Assistance Programs"), including but not limited to (1) IRS Section 42 tax credit program documents, including but not limited to compliance documentation, all reports and/or reporting documents; (2) documentation of current property tax exemption; (3) Form 8609 Low Income Housing Credit Allocation Certifications; (4) Form 8823 Low Income Housing Credit Agencies Report of Noncompliance or Building Disposition; (5) documents identifying placed in service dates and building identification numbers; (6) extended use agreements; (7) documents identifying or related to any Home Investment Partnership Program (HOME) funds provided to the Property and/or Property owner; (8) documents identifying or related to any Low Income Housing Trust Fund Program (LIHTF) funds provided to the Property and/or Property owner; (9) documents identifying or related to Low Income Housing Tax Credit (LIHTC) funds and/or credits provided to the Property and/or Property owner; (10) reporting documents for HOME/LIHTF funds; (11) annual monitoring reports from Nevada Housing Division (NHD); (12) rent schedules for LIHTC/HOME/LIHTF; (13) documents regarding income limits for LIHTC/HOME/LIHTF documents identifying the

breakdown of units by program type; (14) utility allowance schedules, documents providing status of certifications and re-certifications; (15) documents identifying which units are receiving Housing Choice Voucher Program assistance and/or public housing authority assistance; (16) most recent NHD annual reports; (17) Affirmative Fair Housing Marketing Plan (AFHMP) with documentation compliance, Defendants' tenant selection criteria and any waiting lists for subsidized units; and (18) access to NHD Certification On Line (COL) system (collectively, the "Housing Assistance Information").

The Receiver shall retain custody of all of the foregoing until further order of the Court. Defendant and all other persons or entities now or hereafter in possession of the Property, or any part thereof, except for tenants occupying the Property, but including, without limitation, any property management company or agent retained by Borrower ("Prior Management Agent"), any agents of Prior Management Agent and third-party managers engaged by Prior Management Agent, shall surrender possession of all of the foregoing to Receiver, and are otherwise instructed to cooperate fully with Receiver in the exercise of its duties hereunder. Plaintiff, Defendant and their respective employees and agents shall have access to above records and documents upon reasonable notice and during business hours.

8. <u>Prohibited agreements</u>. The Receiver shall not enter into an agreement with any party to this action about the administration of the receivership or about any post-receivership matter.

9. <u>Inventory</u>. Within 30 days after qualifying, the Receiver shall file an inventory of all property possessed under this order.

10. <u>Expenditures</u>. The Receiver shall expend money coming into the Receiver's possession to operate and preserve the Real Property Collateral and only for the purposes authorized in this order. Unless the Court orders otherwise, the Receiver shall to the extent practical hold the balance in interest-bearing accounts. The Receiver shall provide not less than one business day's prior written notice, via email to counsel of record for Plaintiff and Defendant, of the Receiver's intent to incur any expense or obligation in excess of $10,000, provided that in an emergency the Receiver is authorized to take such actions and incur such expenses and obligations as are necessary and appropriate and shall provide prior or subsequent email notice at the earliest opportunity subject

to affirmation by the Court at a hearing that the Receiver shall schedule within five business days of such emergency expense or obligation, which may be a telephonic hearing. Any party objecting to an expense or obligation shall so notify the Receiver immediately by email and shall attempt to resolve such issue in meet and confer session(s) with opposing counsel and/or the Receiver, as appropriate. If no consensual resolution is reached then either party or the Receiver may bring the matter before the Court for further instructions on a telephonic basis. Any person required to be notified by email may request, in addition, to be notified by telephone or facsimile.

11. <u>Leases and rentals</u>. The Receiver may without Court approval enter into leases for a term not exceeding one year, obtain and evict tenants, and set and modify the amounts and terms of leases.

12. <u>Security deposits.</u> Any security or other deposits which tenants have paid to Defendant or its agents and which are not paid to the Receiver, and over which the Receiver has no control, shall be obligations of the Defendant and may not be refunded by the Receiver without an order of this Court. Any other security or other deposits that tenants have paid or may pay to the Receiver, if otherwise refundable under the terms of their leases or agreements with the Receiver, shall be refundable by the Receiver in accordance with the leases or agreements.

13. <u>Monthly accounting of Receiver's income, expenses, and fees</u>.

a. The Receiver shall each month prepare and serve on the parties, but not file, an accounting of the income and expenses incurred in the administration of the receivership for the Real Property Collateral, including the Receiver's fees and expenses.

b. The Receiver is authorized to endorse checks payable to Defendant, to send notice to accounts receivable debtors of Defendant directing the same to make payments due to the Defendant which are part of the Property or the proceeds thereof to the Receiver, to undertake whatever actions are reasonable or necessary to collect the accounts receivable of Defendant, and to compromise the amounts owing from account debtors of the Defendant if in the Receiver's reasonable business judgment it is appropriate to do so.

c. The Receiver may pay the Receiver's own fees and expenses only by the following procedures:

(1) By serving on all parties a notice of intent to pay to which no objection is served on the Receiver within 10 days of the date the notice is served; or

(2) By serving and filing a request for interim payment, which the Court then approves, which request for interim payment does not need to be noticed as a motion, but may be signed by the Court within ten days of filing; or

(3) By obtaining and filing an agreement among all the parties approving the payment, which the Court then approves; or

(4) By filing the Receiver's final accounting and report, which the Court then approves.

    c. The Receiver shall not reimburse the Receiver for the Receiver's general office administration expenses or overhead without Court approval. These expenses include, for example, office supplies and employee payroll, benefits, and taxes.

14. <u>Management</u>.

    a. The Receiver shall operate the Real Property Collateral, take possession of all accounts and all books and records relating to the Real Property Collateral, and has authority to change signatures to the Receiver on signature cards for existing accounts, and transfer existing accounts, or funds in existing accounts, into account(s) set up by Receiver.

    b. The Receiver may

(1) employ agents, employees, clerks, accountants, and property managers to administer the receivership Real Property Collateral, and

(2) purchase materials, supplies, and services reasonably necessary to administer the receivership Real Property Collateral,

(3) undertake any course of action deemed appropriate by Receiver, in his exercise of commercially reasonable business judgment, in order to facilitate environmental investigation and potential remediation at the Real Property Collateral, if needed.

    c. The Receiver may do all the things, and incur the risks and obligations, ordinarily done or incurred by owners, managers, and operators of businesses and property similar to

that possessed by the Receiver, except the Receiver shall not make any capital improvements to the Real Property Collateral without prior Court approval.

15. **Tax Returns.** The Receiver shall have no obligation to prepare or file tax returns on behalf of Borrower.

16. **Utility and Other Services.** Receiver shall not be responsible for payment of any utility bills (including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone), unpaid payroll expenses, unpaid service vendor invoices, unpaid supply vendor invoices or other unpaid invoices incurred by, or the benefit of, the Property prior to the Receiver's taking possession of the Property. By telephonic arrangement of a hearing with Chambers, the Receiver may apply to the Court for a temporary restraining order or injunction in the event that any utility company or other provider of utility service, including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone demands additional deposits or proposes to discontinue service. The Receiver is authorized to open new customer accounts with each utility that provides services to the Real Property Collateral, or require Defendants to name Receiver as an authorized user of any of the existing utility accounts for the Property.

17. **Bank accounts.** The Receiver

   a. may establish accounts at any financial institutions insured by an agency of the United States government that are not parties to this proceeding,

   b. shall deposit in those accounts funds received in connection with the receivership Real Property Collateral, and

   c. shall deposit in interest-bearing accounts money not expended for receivership purposes.

18. **Receiver Certificates.** Upon notice to Defendant and Plaintiff and after a hearing, which may be telephonic, the Receiver, if necessary to manage, operate, and maintain the Real Property Collateral, may issue certificates to evidence loans or advances under already existing credit arrangements, which will be payable solely from the receivership estate. Such certificates may be given priority over all other expenses of the receivership and may be secured by liens on the receivership assets.

19. <u>Intentionally Omitted.</u>

20. <u>Rent Voucher Payments.</u> All Section 8 rent voucher payments and all rent voucher payments from Housing Assistance Programs, including but not limited to the Reno Housing Authority, whether for rent due after the Receiver takes possession of the Real Property Collateral or unpaid rents that were due prior to the Receiver's possession must be paid to the Receiver until the Receiver is discharged.

21. <u>Housing Assistance Information.</u> To the extent that Defendants do not provide the Housing Assistance Information, Receiver may such information from the appropriate Housing Assistance Authorities, including but not limited to the Reno Housing Authority. The Housing Assistance Authorities are hereby authorized to release such Housing Assistance Information to Receiver.

22. <u>Court instructions.</u> The Receiver and the parties may at any time apply to this Court for further instructions and orders and for additional powers necessary to enable the Receiver to perform the Receiver's duties properly.

23. <u>Insurance.</u>

    a. The Receiver shall determine upon taking possession of the Real Property Collateral whether there is sufficient insurance coverage.

    b. The Receiver shall notify the insurer that the Receiver and Plaintiff are to be named as an additional insured on each insurance policy on the Real Property Collateral.

    c. If the Receiver determines that the Real Property Collateral does not have sufficient insurance coverage, the Receiver shall immediately notify the parties and shall procure sufficient all-risk and liability insurance on the Real Property Collateral (excluding earthquake and flood insurance).

    d. If the Receiver does not have sufficient funds to obtain insurance, the Receiver shall seek instructions from the Court on whether to obtain insurance and how it is to be paid for.

24. <u>Employment of attorneys.</u> (a) Before employing legal counsel, the Receiver shall apply to the Court for authority to employ such attorney, except that the Receiver may, without

1 further order of this Court, (i) employ unlawful detainer attorneys and eviction services, and (ii) employ an attorney to provide bankruptcy advice pursuant to paragraph 31 below. (b) Any application for employment of persons not already authorized by this Order must be in writing and must state: (i) the necessity for the employment; (ii) the name of each person whom the receiver proposes to employ; and (iii) that such person is not the attorney for any party, is not associated with or employed by an attorney for any party, and is not an employee of any party.

25. <u>Taxpayer ID numbers</u>. The Receiver may use any federal taxpayer identification numbers relating to the Real Property Collateral for any lawful purpose.

26. <u>Duty to turn over possession</u>. Upon receipt of a copy of a recorded trustee's deed upon foreclosure or written notice from Plaintiff that Defendant has cured the defaults existing under Plaintiff's loan documents or that Plaintiff has accepted a deed in lieu of foreclosure, the Receiver shall, without further order of the Court, turn over possession of the Real Property Collateral to the successful purchaser or Defendant or Plaintiff, as the case may be.

27. <u>Plaintiff's notification of termination</u>. Plaintiff shall notify the Receiver in writing within 48 hours of any event within Plaintiff's knowledge that terminates the receivership.

28. <u>Receiver's final report and account and discharge</u>.

    a. Motion required. Discharge of the Receiver shall require a Court order upon noticed motion for approval of the Receiver's final report and account and exoneration of the Receiver's bond, if any.

    b. Time. Not later than 60 days after the receivership terminates, the Receiver shall file, serve, and obtain a hearing date on a motion for discharge and approval of the final report and account.

    c. Notice. The Receiver shall give notice to all persons of whom the Receiver is aware who have potential claims against the receivership Real Property Collateral.

    d. Contents of motion. The motion to approve the final report and account and for discharge of the Receiver shall contain the following:

        (1) Declaration or declarations. A declaration or declarations: (i) stating what was done during the receivership, (ii) certifying the accuracy of the final accounting,

(iii) stating the basis for the termination of the receivership (such as - foreclosure or reinstatement), and (iv) stating the basis for an order for the distribution of any surplus or payment of any deficit.

(2) Accounting summary. A summary of the receivership accounting, which shall include (i) the total revenues received, (ii) the total expenditures identified and enumerated by major categories, (iii) the net amount of any surplus or deficit, and (iv) evidence of necessary supporting facts.

29. Plaintiff's notice to Receiver. Plaintiff shall promptly notify the Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in the action and their counsel. The parties shall give notice to the Receiver of all events that affect the receivership.

30. Bankruptcy – Plaintiff's duty to give notice. If a defendant files a bankruptcy case during the receivership, Plaintiff shall give notice of the bankruptcy case to the Court, to all parties, and to the Receiver as soon as practicable after the day on which Plaintiff receives notice of the bankruptcy filing.

31. Bankruptcy. If the Receiver receives notice that a bankruptcy has been filed and part of the bankruptcy estate includes property that is the subject of this order, the Receiver may apply to the bankruptcy court to retain legal counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect the receivership.

32. THE COURT ORDERS that defendant TEE INVESTMENT COMPANY, LIMITED PARTNERSHIP, and any other person or entity who may have possession, custody or control of the Real Property Collateral, including any of its agents, representatives, assignees, and employees shall do the following:

a. Turn over property. Turn over to the Receiver possession of the Real Property Collateral after the Court executes this order and all Additional Property; and on or before 5:15 p.m. on June 7, 2010, (i) turn over all modalities of access to the Real Property Collateral and the Additional Collateral, including without limitation all master keys, all unit keys, all keys to common areas, all passwords and all magnetic cards, and all security deposits, prepaid rent, other rental or lease payments, and funds in any bank accounts for the Real Property Collateral, and (ii)

advise the Receiver of federal taxpayer identification numbers relating to the Real Property Collateral.

        b.    <u>Turn over subsequent receipts</u>. Monitor any accounts into which subsequent receipts may be deposited, by automatic payment or otherwise, not less than once each business day, and turn over all such receipts within not less than 36 hours after each deposit.

        c.    <u>Turn over information and remaining property</u>. On or before June 28, 2010, turn over to the Receiver all other Real Property Collateral and Additional Collateral and all other books, documents, and records relating to the Real Property Collateral, including without limitation all Property Information and all Housing Assistance Information.

        d.    <u>Insurance</u>.

           (1)    Immediately advise the Receiver about the nature and extent of insurance coverage on the Real Property Collateral.

           (2)    Immediately name the Receiver as an additional insured on each insurance policy on the Real Property Collateral.

           (3)    DO NOT cancel, reduce, or modify the insurance coverage.

        e.    <u>Restraints</u>. Refrain from

           (1)    committing or permitting any waste on the Real Property Collateral or any act on the Real Property Collateral in violation of law or removing, encumbering, or otherwise disposing of any of the fixtures on the Real Property Collateral;

           (2)    demanding, collecting, or in any other way diverting or using any of the rents or other income from the Real Property Collateral;

           (3)    interfering in any manner with the discharge of the Receiver's duties under this order;

           (4)    selling, transferring, disposing, encumbering, or concealing the Real Property Collateral without a prior Court order; and

           (5)    doing any act that will impair the preservation of the Real Property Collateral or Plaintiff's interest in the Real Property Collateral.

33.    The Receiver is authorized to open new customer accounts with each utility that

1 | provides essential services to the Real Property Collateral.

2 |     34.    All parties to this action shall bring any future litigation involving the use, possession or control over the Real Property Collateral in this Court or the parties to such litigation shall first obtain leave of this Court except the Receiver is authorized and granted leave to bring any unlawful detainer actions relating to the Real Property Collateral in any court.

IT IS SO ORDERED.

DATED this 7th day of June, 2010.

_____
DISTRICT JUDGE

Submitted by:

DUANE MORRIS LLP


By:  /s/ Lucas M. Gjovig
    Lucas M. Gjovig
    SBN 10053
    Attorneys for Plaintiff
    WBCMT 2006-C27 PLUMAS STREET, LLC

EXHIBIT 1

Legal Description

## PARCEL 1

All that certain real property lying within the exterior boundaries of LAKERIDGE APARTMENTS PHASE II, a Condominium Conversion, filed in the office of the Washoe County Recorder, State of Nevada, on April 28, 1981, as File No. 736066, as Tract Map No. 1986, further described as follows:

COMMENCING at the East one quarter corner of Section 35, Township 19 North, Range 19 East, M.D.B. & M., thence North 32°05'39" West 2,032.56 feet to a point on the Westerly right of way of PLUMAS STREET; and the TRUE POINT OF BEGINNING, thence along said Westerly right of way South 05°29'49" East 822.38 feet, thence continuing along said Westerly right of way, Southeasterly along an arc of a curve to the left, having a radius of 1,040.00 feet, concave Northeasterly, a central angle of 06°05'21", and a length of 110.53 feet; thence leaving said Westerly right of way and continuing North 58°13'23" West 133.36 feet; thence North 20°46'21" West 318.70 feet; thence North 72°34'49" West 337.45 feet, thence North 34°41'43" West 110.68 feet; thence North 16°27'36" East 91.76 feet; thence North 05°11'40" West 55.23 feet; thence North 27°57'03" East 55.47 feet; thence North 60°38'32" East 36.72 feet; thence North 11°01'52" West 67.81 feet; thence North 78°33'49" East 459.27 feet to the TRUE POINT OF BEGINNING.

## PARCEL 2

All that certain real property being a portion of the Amended Plat of LAKERIDGE APARTMENTS PHASE I, a condominium conversion filed in the office of the County Recorder of Washoe County, State of Nevada, on March 29, 1989 as Instrument No. 1313633, Tract Map No. 2570, further described as follows:

Beginning at the Southeast corner of said Lakeridge Apartments, Phase I, from which the East ¼ corner of Section 35, T. 19N., R. 19 E., M.D.B.&M., bears S 32° 05'39" E., 2,032.56 feet, said point also being on the Westerly right-of-way of Plumas Street, thence North 05° 29'49" West along said Westerly line 295.72 feet; thence South 78° 33'49" West, 363.06 feet; thence South 10° 55'49" East, 294.15 feet, thence North 78° 33'49" East, 335.06 feet to the point of beginning.

## PARCEL 3

All right, title and interest in and to that certain easement and/or agreement created pursuant to that Easement Grant and Agreement recorded on December 9, 1980 in Book 1578, Page 290, as Instrument No. 711316 in the Official Records of Washoe County, Nevada.

## PARCEL 4

All right, title and interest in and to that certain easement and/or agreement created pursuant to that Declaration of Covenants, Conditions, and Restrictions recorded June 5, 1981 in Book 1638, Page 233, as Instrument No. 742249, in the Official Records of Washoe County, Nevada as modified by instruments recorded on February 27, 1985 in Book 2135, Page 453, as Instrument No. 981278, December 11, 1989 in Book 3005, Page 657, as Instrument No. 1367888; November 17, 1998 in Book 5463, Page 866, as Document No. 2275760 and recorded October 25, 1999 as Document No. 2391771 all in the Official Records of Washoe County, Nevada.

## PARCEL 5

All right, title and interest in and to that certain easement and/or agreement created pursuant to that Declaration of Covenants, Conditions and Restrictions recorded on February 4, 1983 in Book 1830, Page 904, as Instrument No. 837299 in the Official Records of Washoe County, Nevada as modified by instruments recorded on February 27, 1985 in Book 2135, Page 451, as Instrument No. 981277 and December 11, 1989 in Book 3005, Page 657, as Instrument No. 1367888 all in the Official Records of Washoe County, Nevada.

## PARCEL 6

All right, title and interest in and to that certain easement and/or agreement created pursuant to that instrument entitled LITTLE WHEELER PARK AGREEMENT, recorded on December 11, 1989 in Book 3005, Page 657, as Document No. 1367888 in the Official Records of Washoe County, Nevada as modified by instrument recorded on December 4, 1998 in Book 5488, Page 117, as Document No. 2282233 Official Records.

AND

## PARCEL 7

All right, title and interest in and to that certain easement and/or agreement created pursuant to that Agreement and Covenant recorded on December 15, 1989 in Book 3008, Page 249 as Document No. 1369154 in the Official Records of Washoe County, Nevada.

APN's: 042-171-01 through 32, inclusive;
       042-172-01 through 10, inclusive;
       042-181-01 through 41, inclusive;
       042-182-01 through 16, inclusive; and
       042-183-01 through 27, inclusive.