1   ALAN R. SMITH, ESQ.
    Nevada Bar No. 1449                          ***ELECTRONICALLY FILED***
2   Law Offices of Alan R. Smith                        *May 31, 2011*
    505 Ridge Street
3   Reno, Nevada  89501
    Telephone (775) 786-4579
4   Facsimile (775) 786-3066
    **E-mail: mail@asmithlaw.com**
5
    Counsel for Debtor
6

7
                    UNITED STATES BANKRUPTCY COURT
8
                        DISTRICT OF NEVADA
9
                            —ooOoo—
10
    In Re:                                   Case No. BK-N-11-50615-BTB
11
    TEE INVESTMENT COMPANY, a                Chapter 11
12  Nevada Limited Partnership, dba
    LAKERIDGE APARTMENTS,
13                                           Hearing Date: July 21, 2011
            Debtor.                          Hearing Time:   2:00 p.m.
14  _____/

15

16

17
                            **DEBTOR'S**
18               **DISCLOSURE STATEMENT**
19

20

21

22

23

24

25

26

27

28

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579        H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

1.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

    1.1  Purpose of the Amended Disclosure Statement . . . . . . . . . . . . . . . . . . . . . .  1

    1.2  Acceptance and Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    1.3  Confirmation Without Acceptance By All Impaired Classes . . . . . . . . . . .  3

    1.4  Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

2.  INFORMATION REGARDING THE CHAPTER 11 ESTATE . . . . . . . . . . . . . .  4

    2.1  History of the Debtor and Events Leading to the Filing of
          The Chapter 11 Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    2.2  Ownership of Debtor and Its Management . . . . . . . . . . . . . . . . . . . . . . . . .  4

    2.3  Co-Debtors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

3.  DEVELOPMENTS DURING THE COURSE OF THIS
    CHAPTER 11 CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    3.1  Meeting of Creditors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    3.2  Schedules and Statement of Affairs . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.3  Monthly Operating Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.4  Employment of General Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.5  Creditors Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.6  Use of Cash Collateral . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.7  Motion To Retain Receiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

4.  DESCRIPTION OF ASSETS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    4.1  Description of Real Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    4.2  Description of Personal Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

5.  DESCRIPTION OF DEBTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    5.1  Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    5.2  Priority Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    5.3  Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd                    -ii-

1    5.4    Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2    5.5    Claims Deadline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3    6.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES . . . . . . . . . . . . . . . 9

4    7.    DESCRIPTION OF PENDING AND COMPLETED LITIGATION. . . . . . . . . . 9

5    8.    SUMMARY OF AMENDED PLAN OF REORGANIZATION . . . . . . . . . . . . 10

6    8.1    Classification and Treatment of Claims . . . . . . . . . . . . . . . . . . . . . . . . . 10

7    8.2    Treatment of Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8    8.3    Executory Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

9    8.4    Means of Implementing and Funding the Plan . . . . . . . . . . . . . . . . . . . . 16

10    9.    POST-CONFIRMATION FINANCIAL CONDITION OF THE DEBTOR. . . . . 17

11    10.    POST-CONFIRMATION MANAGEMENT OF THE DEBTOR. . . . . . . . . . . . 17

12    11.    ALTERNATIVES TO THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

13    12.    CERTAIN RISKS TO BE CONSIDERED . . . . . . . . . . . . . . . . . . . . . . . . . 18

14    12.1    Risk of Non-Confirmation of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . 18

15    12.2    Non-Consensual Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

16    12.3    Tax Consequences of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

17    12.4    Projections of Operations.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18    12.5    Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

19    13.    CONFIRMATION OF THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

20    13.1    Confirmation of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

21    13.2    Objections to Confirmation of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . 20

22

23

24

25

26

27

28

1    **1.    <u>INTRODUCTION</u>**

2       This Amended Disclosure Statement (hereinafter the "Disclosure Statement") is

3    provided to creditors by the connection with the solicitation of acceptances of the Debtor's

4    Amended Plan of Reorganization (the "Plan"[1]), filed on **May 31, 2011**, or any subsequent

5    amended plan of reorganization.  The Debtor's reorganization case is under Chapter 11 of

6    the United States Code, and was initiated on **March 1, 2011**, in the United States

7    Bankruptcy Court for the District of Nevada, as **Case No. BK-N-11-50615-BTB.**  The

8    Plan provides for the treatment of claims of creditors and interest of the equity security

9    holders[2].

10       The objective of a Chapter 11 bankruptcy case is to obtain Bankruptcy Court

11    approval of a plan of reorganization.  This process is referred to as confirmation of a

12    plan. A plan describes in detail (and in language appropriate for a legal contract) the

13    means for satisfying the claims against, and equity interests in, a Debtor.  After a plan has

14    been filed, the holders of such claims and equity securities that are "impaired" (a term

15    defined in Bankruptcy Code Section 1124 and discussed in detail below) are permitted to

16    vote to accept or reject the plan.  Before a Debtor or other plan proponent can solicit

17    acceptances of a plan, Bankruptcy Code Section 1125 requires the Debtor or other plan

18    proponent(s) to prepare a disclosure statement containing adequate information of a kind,

19    and in sufficient detail, to enable those parties entitled to vote on the plan to make an

20    informed judgment about the plan and whether they should accept or reject the plan.

21       **1.1 Purpose of the Disclosure Statement**

22       The purpose of this Disclosure Statement is to ensure that claimants have adequate

23

24        [1] Capitalized terms not otherwise defined herein will have the same meaning as are

25    ascribed to such terms in the Plan which is filed contemporaneously herewith.

26        [2] An equity security of the Debtor as the term is defined in Section 101(16) of the

27    Bankruptcy Code includes any ownership interest in the Debtor, including membership

28    interests.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

1   information to enable each class to make an informed judgment about the Plan.  The assets

2   and liabilities of the Debtor are summarized herein.  To the extent the information

3   contained in this Disclosure Statement may be inconsistent with the Debtor's Statement of

4   Financial Affairs and (Amended) Schedule of Assets and Liabilities filed on January 10,

5   2011, or subsequent amendments thereto, this Disclosure Statement shall supersede such

6   Statements and Schedules (as may have been amended).

7           This Disclosure Statement describes the business background and operating history

8   of the Debtor before the filing of the case.  It also summarizes certain significant events

9   that have taken place during the case and describes the terms of the Plan, which divides

10  creditor claims and the interests of shareholders into classes and provides for the

11  satisfaction of allowed claims and interests.

12          The Court will set a time and date as the last day to file acceptances or rejections of

13  the Plan.  Thereafter, a hearing on confirmation of the Plan will be held in the United

14  States Bankruptcy Court for the District of Nevada, located at the U.S. Federal Building &

15  Courthouse, 300 Booth Street, Reno, Nevada.  Creditors may vote on the Plan by filling

16  out and mailing a special form of ballot.  The form of ballot and special instructions for

17  voting will be forthcoming upon approval of the Disclosure Statement by the Court.

18  Creditors are urged to carefully read the contents of this Disclosure Statement before

19  making a decision to accept or reject the Plan.

20          **1.2     Acceptance and Confirmation**

21          In order for the Debtor's Plan to be confirmed, each impaired class of claims or

22  interests must accept the Plan, except as set forth below.  In order for the Plan to be

23  deemed accepted, a majority in number and two-thirds in dollar amount of the claims of

24  each class of creditors impaired under the Plan of those that actually vote, must vote for

25  acceptance of the Plan.  Holders of claims who fail to vote are not counted as either

26  accepting or rejecting the Plan.

27          Classes of claims that are not "impaired" under a Plan are deemed to have accepted

28  the Plan.  Acceptances of the Plan are being solicited only from those persons who hold

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd                -2-

1    claims or interests in impaired classes.  A class is "impaired" if the legal, equitable or

2    contractual rights attaching to the claims or interests of that class are modified, other than

3    by curing defaults and reinstating maturities, or by payment in full in cash.

4        **1.3    Confirmation Without Acceptance By All Impaired Classes**

5        The Bankruptcy Code contains provisions for confirmation of a Plan even if the

6    Plan is not accepted by all impaired classes, as long as at least one impaired class of

7    claims has accepted the Plan.  These "cram-down" provisions for confirmation of a Plan,

8    despite the non-acceptance of one or more impaired classes of claims or interest, are set

9    forth in § 1129(b) of the Bankruptcy Code.

10       If a class of unsecured claims rejects the Plan, it may still be confirmed so long as

11   the Plan provides that (i) each holder of a claim included in the rejecting class receive or

12   retain on account of that claim property which has a value, as of the Effective Date, equal

13   to the allowed amount of such claim; or that (ii) the holder of any claim or interest that is

14   junior to the claims of such class will not receive or retain on account of such junior claim

15   or interest any property at all.

16       If a class of secured claims rejects the Plan, it may still be confirmed so long as the

17   Plan provides (i) the holders of such claims retain the lien securing such claim; (ii) the

18   holders of such claims receive on account of such claims deferred cash payments totaling

19   at least the allowed amount of such claims, of a value, as of the Effective Date of the Plan,

20   of at least the value of such claimant's interest in the estate's interest in such property; (iii)

21   for the sale of the property in accordance with § 1129(b)(2)(A)(ii); or (iv) for the

22   realization by such claimants of the indubitable equivalent of the claim.

23       **1.4    Disclaimer**

24       No representations concerning the Debtor is authorized by the Debtor except as set

25   forth in this Disclosure Statement.  Any representations or inducements made to secure

26   your acceptance or rejection of the Plan other than as contained herein have not been

27   authorized and should not be relied upon by you in making your decision, and such

28   additional representations and inducements should be reported to counsel for the Debtor,

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

-3-

who in turn should deliver such information to the Court for such action as may be deemed appropriate. The information contained herein has not been subjected to a certified audit. The records kept by the Debtor and other information relied on herein are dependent upon investigations and accounting performed by the Debtor and others employed by the Debtor. The Debtor is unable to warrant that the information contained herein is without inaccuracy, although a great effort has been made to be accurate, and the Debtor believes that the information contained herein is, in fact, accurate.

**2.    INFORMATION REGARDING THE CHAPTER 11 ESTATE**

   **2.1    History of the Debtor and Events Leading to the Filing of the Chapter 11 Case**

   The Debtor purchased the property known as the Lakeridge East Apartments, 6155 Plumas Street, Reno, Nevada (the "Property") in 1968. In 2006 the Property was refinanced through ARCS in the original principal amount of $11,950,000.00.

   The Debtor successfully operated its business until early 2009, when it began to experience a decline in occupancy generally associated with the decline in the overall national economy and the local economy. As a result, the Debtor became delinquent in its mortgage payments, which ultimately lead to a receivership proceeding being commenced against the Debtor, and a non-judicial foreclosure proceeding against the Property. The filing of this Chapter 11 case stayed the foreclosure upon the Property.

   **2.2    Ownership of Debtor and Its Management.**

   The general partner of the Debtor is the Nathan and Virginia Topol Trust of April 1, 1985, owning 98%. Nathan Topol and Virginia Topol are limited partners owning a total of 2%.

   **2.3    Co-Debtors**

   Nathan Topol is a conditional guarantor of the obligation to ARCS.

**3.    DEVELOPMENTS DURING THE COURSE OF THIS CHAPTER 11 CASE**

   **3.1    Meeting of Creditors**

   The United States Trustee conducted a meeting of creditors pursuant to 11 U.S.C.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

-4-

1  § 341 on April 4, 2011.  The Debtor appeared through its representative Byron Topol.

2      **3.2    Schedules and Statement of Affairs**

3      The Debtor filed its schedule of assets and liabilities and statement of financial

4  affairs on March 1, 2011.  Those schedules and statements may be viewed online at

5  www.nvb.uscourts.gov or may be obtained from the Bankruptcy Clerk for a fee.

6      **3.3    Monthly Operating Reports**

7      Monthly operating reports reflecting the Debtor's ongoing financial status are filed

8  with the United States Bankruptcy Court and can be viewed online at

9  www.nvb.uscourts.gov.

10      **3.4    Employment of General Counsel**

11      The Debtor has noticed its application to employ Alan R. Smith, Esq., as its

12  counsel and to objections were filed.  An order employing counsel is expected to be

13  entered shortly.

14      **3.5    Creditors Committee**

15      An unsecured creditor's committee has not been formed in this case..

16      **3.6    Use of Cash Collateral**

17      The Property has continued to be operated by a receiver for ARCS, and accordingly

18  there are no cash collateral issues.

19      **3.7    Motion To Retain Receiver**

20      On March 10, 2011, ARCS, through its representative WBCMT 2006 - C27 Plumas

21  Street, LLC ("WBCMT"), filed its Motion for Entry of Order Pursuant to 11 U.S.C. §

22  543(d)(1) Maintaining Terrence S. Daly As Custodian In Possession And Control Of

23  Debtor's Real Property, And Excusing Custodian From Compliance With 11 U.S.C. §

24  543(a) and (b) [Dkt. 14].  The Debtor opposed the motion, and the matter was heard on

25  April 14, 2011.  After considering the pleadings, arguments and evidence, the Court

26  granted the motion and ordered that the receiver be retained.

27  ///

28  ///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd                    -5-

# 4.    DESCRIPTION OF ASSETS

## 4.1    Description of Real Property

| Description Type | Assessor's Parcel # | Estimated Value[3] |
|---|---|---|
| Lakeridge West Apartments comprised of 126 apartment units located at 6155 Plumas Street, Reno, Nevada | 042-182-01 through 16<br>042-181-01 through 41<br>042-171-01 through 32<br>042-172-01 through 10<br>104-183-01 through 27 | $10,000,000.00 |

## 4.2    Description of Personal Property

| Description | Location | Est. Current Value |
|---|---|---|
| Checking Account | Bank of the West, Reno Branch, Kietzke | $              0.00 |
| Checking Account | City National Bank Debtor-In-Possession account | $          100.00 |
| Checking Account | City National Bank Operating account | $          100.00 |
| Checking Account | City National Bank Security account | $          100.00 |
| Security Deposits | Held by receiver | $       24,930.00 |
| 2008 Chevrolet Colorado | | $       15,000.00 |
| 2007 Ford Ranger | | $        7,500.00 |
| 2006 Ford E250 Van | | $        6,500.00 |
| 2006 Ford Ranger | | $        6,300.00 |
| Apartment appliances (refrigerators, dishwashers, washers/dryers) | | $      110,000.00 |
| **TOTAL:** | | $      170,530.00 |

---

[3]This is the Debtor's initial estimate only.  May be revised based upon a current appraisal to be obtained by the Debtor, or if the value is determined by the Court.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

5.    **DESCRIPTION OF DEBTS**

    5.1    **Administrative Claims**

        (A)    Attorneys Fees/Law Offices of Alan R. Smith.    The Debtor will be obligated to pay attorneys fees and costs owed to the Law Offices of Alan R. Smith, subject to Court approval.  The Debtor estimates that attorneys fees will be incurred prior to Plan confirmation, but is unable to project the final balance at this time.

        (B)    U.S. Trustee Fees.  All fees required to be paid to the United States Trustee will be paid in full upon the Effective Date of the Debtor's Plan.  U.S. Trustee fees due in this case have been paid.

    5.2    **Priority Claims**

        The Debtor estimates priority claims owed as follows:

| Creditor | Nature of Lien | Estimated Amount of Priority Claim |
|---|---|---|
| Nevada Department of Taxation | Business Taxes | $                    2,771.00 |
| **TOTAL PRIORITY CLAIMS** | | **$                    2,771.00** |

    5.3    **Secured Claims**

        The Debtor has scheduled against it the following secured claims:

| Creditor | Nature of Lien | Est. Amount of Secured Claim |
|---|---|---|
| ARCS | First Deed of Trust | $          13,400,000.00 |
| Ford Motor Company | Security interest in 2007 Ford Ranger | $                 7,121.00 |
| Ford Motor Company | Security interest in 2006 Ford E250 Van | $                 6,309.00 |
| Ford Motor Company | Security interest in 2006 Ford Ranger | $                 6,216.00 |
| GMAC | Security interest in 1008 Chevrolet Colorado | $               14,023.17 |
| TOTAL SECURED CLAIMS | | $ |

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

### 5.4    Unsecured Claims

The Debtor has scheduled against it the following unsecured claims.

| Creditor | Basis of Claim | Scheduled Amount of Claim | Proof of Claim Amount |
|---|---|---|---|
| ARCS | First Deed of Trust | $921,818.00 | |
| Air Filter Sales & Serv | Goods/Services | $35.44 | |
| Appliance Parts | Goods/Services | $668.37 | $786.48 |
| Comyns, Smith, McCleary & Co. | Goods/Services | $10,000.00 | |
| Consumer Source, Inc. | Goods/Services | $11,690.00 | |
| Discount Tire | Goods/Services | $354.86 | |
| Dunseath Key Co. | Goods/Services | $54.99 | |
| Easy Rooter | Goods/Services | $85.00 | |
| Fairway Construction Company | Goods/Services | $11,496.00 | |
| Firstcomp | Goods/Services | $980.00 | |
| Floors R Us | Goods/Services | $733.35 | |
| Fuller Color Center | Goods/Services | $661.09 | |
| GE Appliance | Goods/Services | $298.40 | $298.40 |
| Graybar | Goods/Services | $251.59 | |
| Hutch's Mission Car Wash | Goods/Services | $29.92 | |
| Inland Supply | Goods/Services | $115.80 | |
| Jones Vargas | Goods/Services | $8,383.96 | $16,258.98 |
| Kleaning Connection | Goods/Services | $520.00 | |
| Lakeridge Tennis Club, Inc. | Past due fees for use of club. | $1,603,701.00 | |
| Landlord Protection Service | Goods/Services | $438.00 | |
| Lowe's Business Account | Goods/Services | $289.64 | |
| Marketing Design Works | Goods/Services | $2,400.00 | |
| Morris Peterson | Goods/Services | $1,587.41 | |
| Pacific States Communications | Goods/Services | $568.86 | |
| Pool Water Products | Goods/Services | $129.54 | |
| Professional Communications | Goods/Services | $452.93 | |

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

-8-

| Creditor | Basis of Claim | Scheduled Amount of Claim | Proof of Claim Amount |
|---|---|---|---|
| Quick Smog | Goods/Services | $70.00 | |
| Rapid Refill | Goods/Services | $44.15 | |
| Reimer Pest & Weed | Goods/Services | $675.00 | |
| Sam's Club | Goods/Services | $852.63 | |
| Sierra Welding Supply | Goods/Services | $43.53 | |
| Nathan L. Topol | Loan | $1,090,235.79 | |
| Nathan L. Topol | Loan | $299,356.90 | |
| Victor Illuminating | Goods/Services | $344.00 | $344.00 |
| Ward Young | Goods/Services | $19,569.92 | |
| **TOTAL UNSECURED CLAIMS:** | | **$3,988,936.07** | **$17,687.86** |

### 5.5    Claims Deadline

In accordance with the Bankruptcy Court's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines filed on March 1, 2011, the deadline for filing a proof of claim for all creditors in this action is May 31, 2011, and August 29, 2011 for governmental agencies.

## 6.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is a party to the following executory contracts:

| Executory Contract  Name and Address | Description |
|---|---|
| AT&T Operations, Inc. | Marketing and Service Contract |
| Tenant Leases | All leases with tenants of the Property. |

## 7.    DESCRIPTION OF PENDING AND COMPLETED LITIGATION

The following is a description of the pending pre-petition litigation against the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

-9-

1    Debtor:

2    *WBCMT 2006 - C27 Plumas Street, LLC v. Tee Investments Company, LP*, CV10-

3    01355, Complaint for specific performance and appointment of receiver, among other

4    relief.

5    **8.    SUMMARY OF PLAN OF REORGANIZATION**

6        **THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN OF**

7    **REORGANIZATION WHICH IS FILED CONCURRENTLY HEREWITH (the**

8    **"Plan"), AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES.**

9    **THE SUMMARY IS NOT COMPLETE, AND CREDITORS ARE URGED TO**

10   **READ THE PLAN IN FULL.  A COPY OF THE AMENDED PLAN OF**

11   **REORGANIZATION WILL BE PROVIDED TO ALL CREDITORS. TO THE**

12   **EXTENT THE FOLLOWING SUMMARY INCLUDES DEFINED TERMS,**

13   **THOSE DEFINITIONS ARE INCLUDED IN THE PLAN FILED**

14   **CONCURRENTLY HEREWITH.  ALL CAPITALIZED TERMS HEREINAFTER**

15   **HAVE THE MEANINGS SET FORTH IN THE PLAN.**

16       **8.1    Classification and Treatment of Claims**

17       The Plan designates seven (7) classes of claims.  Those classes take into account

18   the differing nature and priority of the various classified claims under the Bankruptcy

19   Code.

20       The following table briefly summarizes the classification and treatment of all

21   Claims under the Plan and the consideration distributable on account of such Claims under

22   the Plan.  The information set forth in the following table is for convenience of reference

23   only, and each holder of a Claim should refer to the Plan for a full understanding of the

24   classification and treatment of Claims provided for under the Plan.  Claims will receive

25   designated treatment within a Class only to the extent Allowed within that class.  The

26   Claim allowance procedure is an ongoing process and the actual amount of the Allowed

27   Claims may vary from the estimates.

28

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

| CLASS | CLAIMS | SUMMARY OF TREATMENT |
|---|---|---|
| Nonclassified | Administrative Expenses | Paid in full on the latest of (a) on or before the Effective Date; (b) when due or such later date as approved by the claimant; or (c) when allowed by Final Order |
| Nonclassified | Administrative Claims | See Section 8.2.7 below |
| Nonclassified | Priority Claims | See Section 8.2.7 below |
| Class 1 | Secured Claim of ARCS | See Section 8.2.1 below |
| Class 2 | Secured Claim of Ford Motor Credit | See Section 8.2.2 below |
| Class 3 | Secured Claim of Ford Motor Credit | See Section 8.2.3 below |
| Class 4 | Secured Claim of Ford Motor Credit | See Section 8.2.4 below |
| Class 5 | Secured Claim of GMAC | See Section 8.2.5 below |
| Class 6 | Unsecured Claims | See Section 8.2.6 below |
| Class 7 | Membership Interest | Receives no distribution until Class 1 through 6 are paid in full.  See Section 8.2.7 below |

**8.2     Treatment of Claims and Interests**

Each creditor class shall be treated as follows:

**8.2.1   Class 1 (ARCS Secured Claim):**

The ARCS Secured Claim shall be treated under the Plan as follows:

**(A)     Amount of the ARCS Secured Claim**

The amount of the ARCS Secured Claim shall be the lesser of the value of the Property determined as of the Confirmation Date (the "Value as of Confirmation Date") or the ARCS Note Balance.

///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

-11-

1      **(B)      Retention of Security Interest in Property**

2              ARCS shall retain its security interest in the Property as evidenced by the

3  ARCS Deed of Trust.

4      **(C)      Payment of the ARCS Secured Claim**

5              The ARCS Secured Claim shall bear interest at the rate of 4.25% per annum

6  from and after the Effective Date, or, in the event of objection by the Class 1 creditor,

7  such other rate as the Court shall determine is appropriate after considering the evidence at

8  the Confirmation Hearing (the "ARCS Interest Rate").  On or before the 15th day of each

9  and every month, commencing on the 15th day of the next month following the Effective

10  Date, the Debtor shall distribute to ARCS an amount equal to the normal amortized

11  monthly payment based upon the ARCS Interest Rate and a 30-year amortized mortgage

12  term (the "Monthly Class 1 Payment").

13      **(D)      Payment of the Balance Due on the ARCS Secured Claim**

14              The balance owed on the ARCS Secured Claim, together with any and all

15  accrued interest, fees and costs due thereunder, shall be paid on or before ten (10) years

16  following the Effective Date, or such other date as may be proposed by the Debtor and

17  approved by the court at the Confirmation Hearing (the "ARCS Maturity Date"), by the

18  means as set forth in Section 7 below.

19      **(E)      Loan Documents Remain In Effect**

20              The ARCS Note and the ARCS Deed of Trust shall remain in full force and

21  effect, except as modified by or otherwise inconsistent with this Plan, in which event the

22  terms of this Plan shall supersede.

23      **(F)      Plan Default**

24              In the event of a default by the Debtor under the Plan, and in the event

25  Debtor fails to cure such default within fifteen (15) business days after delivery of notice

26  to the Debtor and to Debtor's counsel, ARCS shall be entitled to enforce all of the terms

27  of the ARCS Deed of Trust and the ARCS Note, in addition to all rights available under

28  Nevada law, including, without limitation, foreclosure upon the Property and the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

-12-

1    opportunity to credit bid the entire amount of the ARCS Note at any foreclosure sale.

2                    **(G)    No Release Of Guarantors**

3            This Plan shall not release any guarantors of any of the debts identified

4    herein, and shall specifically not release Nate Topol of any guarantee that he may have of

5    the ARCS debt.

6                    **(H)    Effect Of Election Under 1111(b)(2)**

7            In the event ARCS makes a timely election under Section 1111(b)(2) of the

8    code, and the same is allowed by the Court, then as of the ARCS Maturity Date, the

9    balance paid to ARCS shall be the greater of I) the balance owed on the ARCS Secured

10   Claim as of the ARCS Maturity Date; or ii) the ARCS Note Balance less the total of all

11   payments received by ARCS Post-Petition.

12               **8.2.2   Class 2 (Ford Motor Credit - 2007 Ford Ranger):**

13           The Class 2 claimant shall retain its existing security interest in the 1007

14   Ford Ranger.  The Allowed Secured Claim shall bear interest at the rate of 6% per annum,

15   or, in the event of objection by the Class 2 creditor, such other rate as the Court shall

16   deem appropriate after consideration of the evidence at the Confirmation Hearing (the

17   "Class 2 Interest Rate").  The Allowed Secured Claim shall be amortized with equal

18   monthly payments over a period of two years, or such other period as may be proposed by

19   the Debtor at the Confirmation Hearing and approved by the Court.  Payments shall

20   commence on the first business day at least 15 days following the Effective Date.  To the

21   extent unaltered by the terms and conditions of this Plan, the existing promissory note and

22   security agreement with the Class 2 creditor shall remain in full force and effect.  In the

23   event of default, the Class 2 creditor shall provide the Debtor with 10 days written notice

24   of such default, and in the event such default remains uncured within 10 days, the Class 2

25   creditor shall be entitled to enforce all of the terms of its promissory note and security

26   agreement, including repossession of the collateral.

27               **8.2.3   Class 3 (Ford Motor Credit - 2006 Ford E250 Van):**

28           The Class 3 claimant shall retain its existing security interest in the 1007

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd                   -13-

1  Ford Ranger.  The Allowed Secured Claim shall bear interest at the rate of 6% per annum,

2  or, in the event of objection by the Class 3 creditor, such other rate as the Court shall

3  deem appropriate after consideration of the evidence at the Confirmation Hearing (the

4  "Class 3 Interest Rate").  The Allowed Secured Claim shall be amortized with equal

5  monthly payments over a period of two years, or such other period as may be proposed by

6  the Debtor at the Confirmation Hearing and approved by the Court.  Payments shall

7  commence on the first business day at least 15 days following the Effective Date.  To the

8  extent unaltered by the terms and conditions of this Plan, the existing promissory note and

9  security agreement with the Class 3 creditor shall remain in full force and effect.  In the

10  event of default, the Class 3 creditor shall provide the Debtor with 10 days written notice

11  of such default, and in the event such default remains uncured within 10 days, the Class 3

12  creditor shall be entitled to enforce all of the terms of its promissory note and security

13  agreement, including repossession of the collateral.

14  **8.2.4   Class 4 (Ford Motor Credit - 2006 Ford Ranger):**

15  The Class 4 claimant shall retain its existing security interest in the 1007

16  Ford Ranger.  The Allowed Secured Claim shall bear interest at the rate of 6% per annum,

17  or, in the event of objection by the Class 4 creditor, such other rate as the Court shall

18  deem appropriate after consideration of the evidence at the Confirmation Hearing (the

19  "Class 4 Interest Rate").  The Allowed Secured Claim shall be amortized with equal

20  monthly payments over a period of two years, or such other period as may be proposed by

21  the Debtor at the Confirmation Hearing and approved by the Court.  Payments shall

22  commence on the first business day at least 15 days following the Effective Date.  To the

23  extent unaltered by the terms and conditions of this Plan, the existing promissory note and

24  security agreement with the Class 4 creditor shall remain in full force and effect.  In the

25  event of default, the Class 4 creditor shall provide the Debtor with 10 days written notice

26  of such default, and in the event such default remains uncured within 10 days, the Class 4

27  creditor shall be entitled to enforce all of the terms of its promissory note and security

28  agreement, including repossession of the collateral.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd    -14-

1    **8.2.5   Class 5 (GMAC - 2008 Chevrolet Colorado):**

2         The Class 5 claimant shall retain its existing security interest in the 1007

3    Ford Ranger.  The Allowed Secured Claim shall bear interest at the rate of 6% per annum,

4    or, in the event of objection by the Class 5 creditor, such other rate as the Court shall

5    deem appropriate after consideration of the evidence at the Confirmation Hearing (the

6    "Class 5 Interest Rate").  The Allowed Secured Claim shall be amortized with equal

7    monthly payments over a period of two years, or such other period as may be proposed by

8    the Debtor at the Confirmation Hearing and approved by the Court.  Payments shall

9    commence on the first business day at least 15 days following the Effective Date.  To the

10   extent unaltered by the terms and conditions of this Plan, the existing promissory note and

11   security agreement with the Class 5 creditor shall remain in full force and effect.  In the

12   event of default, the Class 5 creditor shall provide the Debtor with 10 days written notice

13   of such default, and in the event such default remains uncured within 10 days, the Class 5

14   creditor shall be entitled to enforce all of the terms of its promissory note and security

15   agreement, including repossession of the collateral.

16        **8.2.6   Class 6 (Unsecured Claims):**

17        Allowed Unsecured Claims shall receive a prorata distribution of the Equity

18   Contribution as described in Section 7.1 below (the "Unsecured Creditor Contribution").

19   The Debtor may propose a greater distribution amount at or before the time of the

20   Confirmation Hearing.

21        **8.2.7   Class 7 (Membership Interests):**

22        The members shall retain their membership interests in the Reorganized Debtor, but

23   shall receive no distribution until Classes 1 through 6 are paid in full.

24        **8.2.8   Treatment of Unclassified Claims:**

25             **(A)    Administrative Claims**

26        Claims arising during the administration of the Debtor's Chapter 11 case and

27   entitled to priority under Section 507(a)(1) of the Bankruptcy Code are not classified

28   under the Plan.  Holders of such claims shall be paid in full on the latter of the Effective

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd          -15-

1  Date, or fifteen (15) days after entry of an order creating an Allowed Administrative

2  Claim, unless holders of an Allowed Administrative Claim agree to alternative treatment.

3  Allowed Administrative Claims may be paid by the members of the Debtor.

4  **(B)    Fees to the United States Trustee**

5      All fees required to be paid to the United States Trustee will be paid in full upon

6  the Effective Date of the Debtor's Plan, and shall remain current until the case is fully

7  administered, closed, converted or dismissed, whichever occurs first.  Such fees may be

8  paid by cash contributions by the member of the Debtor.

9  **(C)    Priority Claims**

10      Allowed Priority Claims shall be paid in full within 60 months following the

11  Effective Date, with interest, as provided by 11 U.S.C. §1129(a)(9).

12  **(D)    Disputed Claims**

13      All payments hereunder to creditors whose claims are not liquidated or are disputed

14  shall be paid into a segregated trust account until such claims are an Allowed Claim, in

15  which case the proceeds shall be disbursed, or such claim shall be disallowed.

16  **8.3    Executory Contracts**

17      All executory contracts of the Debtor are assumed, and shall be maintained current.

18  To the extent not cured prior to the Effective Date, all delinquent payments owed to Best

19  Western International, Inc. shall be paid current as of the Effective Date.  Such payment

20  shall be made by contributions from the Debtor's members or affiliates.  The required

21  payment amount shall be deposited in a segregated trust account prior to June 23, 2011.

22  **8.4    Means of Implementing and Funding The Plan**

23  **8.4.1   Contribution From Members**

24      The Debtor's members shall contribute the sum of $75,000.00 (the "Equity

25  Contribution"), of which $50,000.00 shall be distributed to unsecured creditors as set forth

26  in Section 8.2 (G) above (the "Unsecured Creditor Contribution").  Such sum shall be

27  deposited into a segregated trust account prior tot he Plan confirmation.

28  ///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd     -16-

### 8.4.2   Continued Operation

The Plan will be funded by the Debtor's income from the ongoing operation of its business.  Debtor anticipates that this will be sufficient to make the payments due of the Class 1, 3, 4 and 5 claims.

### 8.4.3   Sale or Refinance of Property

The Debtor will sell or refinance the Property before the Excel Maturity Date.  The proceeds from such sale or refinance shall be used to fund the Plan as set forth herein.

### 8.4.4   Disputed Claims

All sums contemplated to be paid under the Plan to creditors whose claims are not liquidated or are disputed shall be paid into a segregated trust account until such claims are an Allowed Claim, in which case the proceeds shall be disbursed, or such claim shall be disallowed.

### 8.4.5   Revesting of Assets in the Debtor

Upon confirmation of the Plan, all property of the estate of the Debtor shall be revested in the Debtor, pursuant to 11 U.S.C. § 1141(c), which shall retain such property as the Reorganized Debtor free and clear of all claims and interests of the creditors, except as set forth in the Plan.

### 8.4.6   Disbursing Agent

The Debtor will serve as disbursing agent and shall make all payments required under the Plan.  The disbursing agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

## 9.    POST-CONFIRMATION FINANCIAL CONDITION OF THE DEBTOR

Following Plan confirmation, the Debtor believes that its post-confirmation financial condition shall be as set forth in the Post-Petition Balance Sheet attached to the Disclosure Statement as **Exhibit "A."**

## 10.    POST-CONFIRMATION MANAGEMENT OF THE DEBTOR

The Debtor shall manage the Property Post Confirmation, and may employ such persons as it deems necessary for effective management.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

-17-

1 **11.    <u>ALTERNATIVES TO THE PLAN</u>**

2 The Debtor believes that the Plan provides its creditors with the earliest and

3 greatest possible value that can be realized on their claims.

4 Under § 1121 of the Bankruptcy Code, the Debtor has the exclusive right to file a

5 plan of reorganization during the first 120 days after commencement of its Chapter 11

6 case, or as otherwise extended by the Court. The Plan was filed within such 120 day

7 period. In addition, if the Plan is not accepted, other parties in interest may have an

8 opportunity to file an alternative plan of reorganization.

9 Alternatively, a liquidation of the Debtor's assets could be conducted as described

10 in Section 13 of this Disclosure Statement. For the reasons described in that section,

11 Debtor believes that the distribution to each impaired class under the Plan will be greater

12 and earlier than distributions that might be received in a Chapter 7 liquidation of the

13 Debtor's assets.

14 **12.    <u>CERTAIN RISKS TO BE CONSIDERED</u>**

15 HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND

16 CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE

17 OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND

18 THE DOCUMENTS ATTACHED OR DELIVERED HEREWITH AND/OR

19 INCORPORATED HEREIN BY REFERENCE), IN DETERMINING WHETHER OR

20 NOT TO ACCEPT OR REJECT THE DEBTOR'S PLAN. THESE RISK FACTORS

21 SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY

22 RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS

23 IMPLEMENTATION.

24 **12.1    Risk of Non-Confirmation of the Plan**

25 Because the Plan provides for the reorganization of the Debtor as a going concern,

26 many of the common risk factors found in typical reorganizations apply with respect to the

27 Plan. These include (a) the value of the Debtor's property has suffered significantly as a

28 result of the downturn in the United States economy since the summer of 2009. There is

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

-18-

1    no assurance that the Debtor's projections of the stabilized income from the Property will

2    occur, or that these projections will occur within the time period projected in the Plan; (c)

3    because the Plan is dependent on continued room rentals at the Property, there is a risk

4    that the projections of net operating income, with which to pay the Allowed Claims of

5    Creditors, may not be met; (d)  if Excel National Bank is not paid in accordance with the

6    Plan, and the Debtor is unable to sell the Property or to secure alternative financing, Excel

7    National Bank may foreclose on the Property.  Debtor is unaware of any regulatory

8    contingencies or risks in connection with the Plan.

9       **12.2    Non-Consensual Confirmation**

10      In the event one or more impaired Classes of Claims does not accept the Plan, the

11   Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request, if all other

12   conditions for confirmation have been met and at least one impaired Class has accepted

13   the Plan (such acceptance being determined without including the vote of any "insider" in

14   such Class) and, as to each impaired Class that has not accepted the Plan "does not

15   discriminate unfairly" and is "fair and equitable" with respect to the rejecting impaired

16   classes.  The Debtor believes that the Plan satisfies those requirements.

17      **12.3    Tax Consequences of the Plan**

18      The Debtor believes that there are no federal income tax consequences peculiar to

19   its Plan.  EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT WITH

20   HIS/HER TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND

21   FOREIGN TAX CONSEQUENCES TO HIM/HER OF THE PLAN.

22      **12.4    Projections of Operations**

23      The Debtor's projection of its future income and expenses is set forth in **Exhibit**

24   **"B"** attached hereto.  Those projections are based upon historical operations and projected

25   increase in room rentals up to a stabilized level.

26      **12.5    Liquidation Analysis**

27      Should the Debtor be forced to terminate its business operations or convert its case

28   to Chapter 7 and have a trustee conduct the liquidation of its assets, Debtor estimates that

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd         -19-

1  such a liquidation will result in payment only to Excel National Bank on its secured claim

2  (Class 1 creditor) and no distribution to any of the other creditors (Classes 2, 3, 4, 5, and

3  6). This is because Debtor will be unable to obtain any financing, which will lead to

4  foreclosure on the Property and the personal property. The Debtor believes the value of

5  the Property can only be enhanced by continued operation of the Property, reaching

6  stabilized occupancy, and a more favorable economic environment.

7  **13.   CONFIRMATION OF THE PLAN**

8        **13.1    Confirmation of the Plan**

9        Pursuant to Section 1128(a) of the Bankruptcy Code, the Bankruptcy Court will

10  conduct a hearing regarding confirmation of the Plan at the United States Bankruptcy

11  Court, 300 Booth Street, Reno, Nevada 89509, pursuant to separate notice provided to

12  creditors and interested parties.

13        **13.2    Objections to Confirmation of the Plan.**

14        Section 1128(b) provides that any party-in-interest may object to confirmation of a

15  plan. Any objections to confirmation of the Plan must be in writing, must state with

16  specificity the grounds for any such objections and must be filed with the Bankruptcy

17  Court and served upon the following parties so as to be received on or before the time

18  fixed by the Bankruptcy Court:

19            Alan R. Smith, Esq.
             505 Ridge Street
20            Reno, Nevada 89501
             Telephone: 775/786-4579
21            Facsimile:  775/786-3066
             Email: mail@asmithlaw.com
22

23  For the Plan to be confirmed, the Plan must satisfy the requirements stated in Section 1129

24  of the Bankruptcy Code.

25        **DATED** this 31st day of May, 2011.

26                                LAW OFFICES OF ALAN R. SMITH

27                                By:_____/s/ Alan R. Smith_____
                                      ALAN R. SMITH, ESQ.
28                                    Counsel for Debtor

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

-20-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

**POST-PETITION BALANCE SHEET**

Law Offices of
**ALAN R. SMITH**
**505 Ridge Street**
**Reno, Nevada 89501**
(775) 786-4579

H:\Tee Investment\Plan & DS\DS 053111-dlg.wpd

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "B"**

**PROJECTED MONTHLY NET INCOME**

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579