DOMINICA C. ANDERSON (SBN 2988)
HOLLY S. STOBERSKI (SBN 5490)
*CM/ECF Registration No. Pending*
**DUANE MORRIS LLP**
100 North City Parkway, Suite 1560
Las Vegas, NV 89106-4617
Telephone: (702) 868-2600
Facsimile: (702) 385-6862
E-Mail: dcanderson@duanemorris.com
         hstoberski@duanemorris.com

NEIL W. BASON (CA SBN 167662)
*Pro Hac Vice Pending*
**DUANE MORRIS LLP**
One Market Plaza
Spear Street Tower, Suite 2200
San Francisco, CA 94105-1127
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail: nwbason@duanemorris.com

Attorneys for Secured Creditor,
WBCMT 2006-C27 PLUMAS STREET, LLC

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA – RENO DIVISION

| | |
|---|---|
| In re | Case No. 3:11-BK-50615-BTB |
| TEE INVESTMENT COMPANY, Limited Partnership, dba LAKERIDGE APARTMENTS, | Chapter 11 |
| Debtor. | **OBJECTION OF SECURED CREDITOR WBCMT 2006-C27 PLUMAS STREET, LLC TO DEBTOR'S DISCLOSURE STATEMENT** |
| | Date: July 21, 2011<br>Time: 2:00 p.m.<br>Place: C. Clifton Young Federal Bldg.<br>300 Booth Street<br>Courtroom 2, 5th Floor<br>Reno, NV 89509 |

Secured Creditor WBCMT 2006-C27 Plumas Street, LLC ("Secured Creditor") objects as follows to the Disclosure Statement (Docket No. 44) (the "Disclosure Statement") filed by debtor Tee Investment Company ("Debtor") in connection with its Debtor's Plan of Reorganization (Docket No. 43) (the "Plan").

1
SECURED CREDITOR'S OBJECTION TO DISCLOSURE STATEMENT

## I. INTRODUCTION.

No creditor could make an informed vote based on the omissions and misinformation provided in the Disclosure Statement. At best the Plan proposes a dividend to general unsecured creditors of less than 1.75%, but in fact any dividend would be much smaller under the Plan, because the Disclosure Statement grossly understates Secured Creditor's likely deficiency claim. Moreover, the dividend actually should be much greater, because at least one insider of Debtor is jointly and severally liable as a general partner, and other insiders have substantial exposure for other reasons. The liquidation analysis in the Disclosure Statement fails even to mention these things, let alone offer excuses for Debtor's favorable treatment of insiders. Debtor's omissions are particularly inexplicable because many of the same issues were raised in connection with Secured Creditor's successful motion to maintain the pre-petition receiver as custodian of Debtor's property (the "Receiver") and excuse the Receiver from turnover (Docket No. 14) (the "Motion To Excuse Turnover By Receiver").

## II. FACTUAL BACKGROUND.

Secured Creditor has a duly perfected and enforceable first priority lien against substantially all of Debtor's property, including the real property and improvements commonly known as Lakeridge Apartments West, 6155 Plumas Street, Reno, Nevada (the "Property"). That lien secures the indebtedness under two promissory notes and the associated loan documents, in the original principal amounts of $11,950,00.00 and $800,000.00 (collectively, the "Loan"). As reflected in Secured Creditor's filed proof of claim (Claim No. 5-1) the total amount due under the Loan is approximately $14,242,985.81. Secured Creditor believes that the fair market value of the Property is approximately $12 million, resulting in an estimated deficiency claim of over $2 million.[1]

Among the collateral assigned to Secured Creditor is a Use Agreement ("Use Agreement") between Debtor and Lakeridge Tennis Club, Inc. (the "Tennis Club") dated June 30, 2006, pursuant to which tenants of the Debtor may use the Tennis Club's facilities in exchange for the Debtor paying the Tennis Club $100 per month. As set forth in the Motion To Excuse The Receiver From

---

[1] Secured Creditor reserves all rights regarding valuation, and any dollar amounts stated herein are only Secured Creditor's initial estimate, which may be revised based on appraisals, changed circumstances or other factors, or valuations by the Court.

Turnover, Secured Creditor is informed and believes that Mr. Topol and/or relatives of Mr. Topol have an interest in the Tennis Club.  In particular, on page 5 of the Use Agreement, Mr. Topol signs the Use Agreement in his capacity as general partner of the Debtor, while a "Tamari Topol" signs the Use Agreement as president of the Tennis Club.

On February 9, 2011, Secured Creditor caused a Notice of Trustee's Sale to be recorded, which set a non-judicial foreclosure sale of the Property for March 7, 2011 at 11:00 a.m.  Debtor filed its voluntary chapter 11 petition on the eve of foreclosure, on March 1, 2011 (the "Petition Date").

On March 10, 2011, Secured Creditor filed its Motion To Excuse Turnover By Receiver.  That motion points out, among other things, the following ways in which Debtor is acting solely for the benefit of insiders and contrary to the best interests of creditors:

> 20. The Debtor's Schedule F lists an undisputed claim by the Tennis Club in the amount of **$1,603,701.00**, based upon "usage fees for tennis and athletic club facility."  How can the Tennis Club have a claim in this amount when the Use Agreement provides that access is based upon the Debtor paying $100.00 per month?  What are the interests of Mr. Topol and his family members in the Tennis Club?
>
> 21. Schedule G <u>omits the Use Agreement</u>.  Why is the Use Agreement, which indisputably enhances cash generating potential of the Property, not listed?  Because it contains terms and conditions that are now deemed disadvantageous to Mr. Topol and/or his family members?
>
> 22. Item 23 of the Debtor's Statement of Financial Affairs (Withdrawals from a partnership or distributions by a corporation) lists withdrawals by Mr. Topol in an "unknown amount" between March 2010 and March 2011.  However, Schedule F lists undisputed claims by Mr. Topol in the amount of $1,090,235.79, for "entitlement expenses for tentative map and special use permits," and $299,356.90 for "contributions."  How is it that Mr. Topol knows the amount the Debtor allegedly owes to him, yet has no idea how much of the Debtor's funds (which constituted Secured Creditor's cash collateral) he withdrew?
>
> 23. Item 21 of the Debtor's Statement of Financial Affairs (Current Partners, Officers, Directors and Shareholders) lists Mr. Topol but neglects to list the nature of his interest in the Debtor or the percentage interest.  [Motion To Excuse Receiver From Turnover (Docket No. 14) (emphasis in original)]

On April 7, 2011, Secured Creditor filed its Reply (Docket No. 28) in support of the Motion To Excuse Receiver From Turnover.  That Reply points out that, in addition to the foregoing:

> Debtor is still favoring insiders at the expense of creditors:
>
> * * *

3
SECURED CREDITOR'S OBJECTION TO DISCLOSURE STATEMENT

    a) The Debtor's general partner was Nathan Topol, but the Debtor has just revealed in its "Corporate" Resolution (Docket No. 9) that it has purported to replace Nathan Topol with a trust, in violation of the Loan Documents and in an apparent attempt to shield Nathan Topol from personal liability. *Compare* Bason Decl. Exs. 1 & 2 (promissory notes executed by Nathan Topol as general partner) *with* Ex. 3 ("Corporate Resolution" listing the Nathan & Virginia Topol Trust of April 1, 1985 as the general partner). The Debtor's Statement of Financial Affairs ("SOFA") says nothing about this apparent fraud on creditors. *See* Bason Decl. Ex. 4 (SOFA).

    b) At the meeting of creditors, both the Debtor's representative, Byron Topol, and the Debtor's attorney acknowledged that (I) various transactions with affiliates were omitted from the Debtor's bankruptcy schedules and SOFA, and (II) they have not conducted a thorough analysis of possible fraudulent or preferential transfers. *See* Penwarden Decl. ¶¶ 7-8. There are no notations on the Debtor's bankruptcy schedules or SOFA to alert creditors to this missing information (*see* Bason Decl. Ex. 4), and it is impossible to know what else might be undisclosed that did not happen to arise at the meeting of creditors.

## III. DISCUSSION.

A disclosure statement must contain "adequate information," meaning information in sufficient detail that enables a creditor or interest holder belonging to a particular class to make an informed judgment whether to accept or reject the plan. 11 U.S.C. § 1125(a)(1). *In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1998). Among other things, a disclosure statement typically should: (a) describe assets and their value, (b) describe the debtor's pre- and postpetition financial condition, (c) provide financial information, data, valuations, and/or projections relevant to voting and feasibility, (d) explain risks under the plan, and (e) explain the relationship of the debtor with affiliates. *In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). Debtor's Disclosure statement is not remotely close to meeting these standards.

<u>Nathan Topol, and Other Insiders</u>. As set forth in the factual background above, Debtor's principal, Nathan, was Debtor's general partner at the time when many of its outstanding debts were incurred, including Debtor's obligations to Secured Creditor. Therefore, as Debtor's counsel did not dispute at the hearing on the Motion To Excuse Receiver From Turnover, Nathan Topol is personally liable for those obligations. Yet Debtor's liquidation analysis fails to estimate the

recovery that could be obtained from Nathan on account of his general partner liability, which is critical under the "best interests of creditors test." *See* 11 U.S.C. § 1129(a)(7)). The rest of the Disclosure Statement also fails to reveal anything about this issue. *Compare* Disclosure Statement at 4:20-23 (stating only that Debtor's *current* general partner is a family trust, and that Nathan and Virginia Topol are limited partners).

Debtor likewise has claims against Nathan Topol, and any other insiders who received funds or property while Debtor was insolvent. There are well-established grounds for recovery of dividends made from an insolvent entity, or preferential payments of alleged debts of insiders, or transfers to insiders disguised as debt repayment that in fact were distributions on account of their equity interests. The Disclosure Statement fails even to acknowledge that the transfers occurred, either in its liquidation analysis or elsewhere.

In addition, because Debtor's claims against Nathan Topol far exceed his claims against Debtor, he should not receive any distributions at all. Instead the Plan proposes to pay him the lion's share of any distribution to general unsecured creditors, on account of alleged "loans" (doubtless more properly characterized as equity contributions) of over $1.3 million. Again, the Disclosure Statement fails to address any of this. *See* Disclosure Statement at 9:7-9 (listing Nathan's "loans" without comment).

The Use Agreement. As noted above, Secured Creditor pointed out in the Motion To Excuse Turnover By Receiver that Debtor's Schedule G omits the valuable Use Agreement between Debtor and its affiliate, the Tennis Club. At that time Debtor responded, in a declaration of Byron Topol (Docket No. 20, ¶ 12), that such omission "was not intentional." But the Disclosure Statement once again fails to list the Use Agreement as an executory contract (*see* Disclosure Statement at 9:18-25), or state whether Debtor intends to assume or reject it, or provide any other information regarding the current state of the Use Agreement, any relevant history, any claims between Debtor and the Tennis Club, and what Debtor intends to do in future regarding use of the Tennis Club.

The Four Trucks. Secured Creditor previously pointed out, in its Motion To Excuse Receiver From Turnover, that Debtor cannot obtain a vote of general unsecured creditors in favor of any plan of reorganization because of Secured Creditor's large deficiency claim, and therefore Debtor cannot

obtain a consenting impaired class (11 U.S.C. § 1129(a)(10) & (b)) and is ineligible for cramdown. *See* Motion To Excuse Receiver From Turnover (Docket No. 14) at 7:1-8. At the time of the hearing on that motion, Debtor had no argument to the contrary. But now Debtor's Plan attempts artificially to impair four secured truck loans, in the hope of obtaining a consenting impaired class. Specifically, Debtor proposes to pay each of the truck loans in two years at an interest rate of 6% per annum. *See* Plan at 6:26-9:2 (Classes 2-5).

First, the Disclosure Statement fails to reveal anything about each of these loans: their current interest rates, the remaining term of each loan, and so on. Second, Debtor fails to explain why it is in the best interest of creditors to bear the expense of any trucks for a 126-unit apartment complex, let alone four of them. No doubt in reality these four trucks are for the personal use of the Topols and their friends and retaining them is of no benefit to Debtor, as evidenced by the fact that Debtor did not turn over any of the trucks to the Receiver and on information and belief the Receiver has been operating the Property for many months without the need for any trucks.

<u>The Disclosure Statement Contains Numerous Other Errors</u>. In addition to the foregoing errors, the Disclosure Statement has numerous other errors, including the following. It continues to refer to "ARCS," Secured Creditor's predecessor in interest, notwithstanding that Secured Creditor's filed proof of claim, to which no objection has been filed, establishes that it is the successor in interest and holder of the loan debt. It estimates Secured Creditor's deficiency claim at less than $1 million when as noted above the actual dollar amount appears to be in excess of $2 million. *See* Disclosure Statement at 8:5. It inappropriately makes statements that purport to summarize the law in ways that are inaccurate or argumentative, none of which has any place in a disclosure statement. *See, e.g.,* Disclosure Statement at 3:4-22 (summary of cramdown that among other things omits need for consenting impaired class). It contains meaningless text that is apparently a holdover from some amended plan in another case. *See, e.g., id.* at 16:17-21 (referring to executory contract with Best Western).

<u>Confirmation issues</u>. In addition to the foregoing, it would be inefficient to proceed with approval of any disclosure statement or balloting when Debtor's Plan is unconfirmable because of Debtor's inability to obtain a consenting impaired class, both due to its artificial impairment of the

SECURED CREDITOR'S OBJECTION TO DISCLOSURE STATEMENT
DM3\1832974.1 R1501/00047

four truck claims and due to Secured Creditor's ability to control the class of general unsecured creditors (as further described in the Motion To Excuse Receiver From Turnover). In addition, the dollar amount of "new value" that Debtor proposes to use is inadequate, and Debtor fails to provide an opportunity for bidding or other market-testing of the amount of such new value. Secured Creditor reserves all of its rights to object to confirmation of the Plan on these or any other grounds.

## IV. CONCLUSION.

For all of the foregoing reasons, Debtor's Disclosure Statement should not be approved.

Respectfully submitted,

DATED: July 7, 2011

DUANE MORRIS LLP

By: */s/ Neil W. Bason* (CA SBN 167662)

Attorneys for Secured Creditor WBCMT 2006-C27 PLUMAS STREET, LLC

## PROOF OF SERVICE

1. On July 7, 2011, I served the following documents:

    a. **OBJECTION OF SECURED CREDITOR WBCMT 2006-C27 PLUMAS STREET, LLC TO DEBTOR'S DISCLOSURE STATEMENT**

2. I served the above-named document by the following means to the persons listed below:

    a. By electronic transmission through the CM/ECF filing system of the US Bankruptcy Court, District of Nevada, to the parties listed below:

Alan R. Smith  
505 Ridge Street  
Reno, NV 89501  

*Debtor's Counsel*

U.S. Trustee-RN-11  
300 Booth Street, Suite 3009  
Reno, NV 89509  

*Trustee*

Brian R. Irvine  
Jones Vargas  
100 W. Liberty St., 12th Floor  
P.O. Box 281  
Reno, NV  89504

*Attorneys for Creditor Jones Vargas*

    b. By U.S. Mail to the parties listed below:

Tee Investment Company, Limited Partnership  
dba Lakeridge Apartments  
6100 Plumas Street  
Reno, NV 89519

*Debtor*

3. I declare under penalty of perjury that the foregoing is true and correct.

SIGNED: July 7, 2011

| Aristela Wise | /s/ Aristela Wise (xxx-xx-2624) |
|---|---|
| (Name of Declarant) | (Signature of Declarant) |