1  ALAN R. SMITH, ESQ.
   Nevada Bar No. 1449
2  Law Offices of Alan R. Smith
   505 Ridge Street
3  Reno, Nevada  89501
   Telephone (775) 786-4579
4  Facsimile (775) 786-3066
   **E-mail: mail@asmithlaw.com**

5
   Counsel for Debtor
6

7
                    UNITED STATES BANKRUPTCY COURT
8
                        DISTRICT OF NEVADA
9
                            —ooOoo—
10
   In Re:                              Case No. BK-N-11-50615-BTB
11
   TEE INVESTMENT COMPANY, a           Chapter 11
12 Nevada Limited Partnership, dba
   LAKERIDGE APARTMENTS,
13                                      Hearing Date:   July 21, 2011
                                        Hearing Time:   2:00 p.m.
           Debtor.
14 _____/

15

16

17

18            **DEBTOR'S FIRST AMENDED**

19            **DISCLOSURE STATEMENT**

20

21

22

23

24

25

26

27

28

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd

ELECTRONICALLY FILED
September 9, 2011

# TABLE OF CONTENTS

Page

1.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

    1.1  Purpose of the Amended Disclosure Statement . . . . . . . . . . . . . . . . . . . . . .  1

    1.2  Acceptance and Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    1.3  Confirmation Without Acceptance By All Impaired Classes . . . . . . . . . . .  3

    1.4  Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

2.  INFORMATION REGARDING THE CHAPTER 11 ESTATE. . . . . . . . . . . . . .  4

    2.1  History of the Debtor and Events Leading to the Filing of
         The Chapter 11 Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    2.2  Ownership of Debtor and Its Management . . . . . . . . . . . . . . . . . . . . . . . . . .  4

    2.3  Co-Debtors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

3.  DEVELOPMENTS DURING THE COURSE OF THIS
    CHAPTER 11 CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.1  Meeting of Creditors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.2  Schedules and Statement of Affairs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.3  Monthly Operating Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.4  Employment of General Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.5  Creditors Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.6  Use of Cash Collateral. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

    3.7  Motion To Retain Receiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

4.  DESCRIPTION OF ASSETS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    4.1  Description of Real Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

    4.2  Description of Personal Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

5.  DESCRIPTION OF DEBTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    5.1  Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    5.2  Priority Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    5.3  Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    5.4  Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd

-ii-

1    5.5    Claims Deadline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

2    6.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES . . . . . . . . . . . . . . .    10

3    7.    DESCRIPTION OF PENDING AND COMPLETED LITIGATION. . . . . . . . .    11

4    8.    SUMMARY OF AMENDED PLAN OF REORGANIZATION . . . . . . . . . . . . .    11

5    8.1    Classification and Treatment of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

6    8.2    Treatment of Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

7    8.3    Executory Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

8    8.4    Means of Implementing and Funding the Plan . . . . . . . . . . . . . . . . . . . . .    17

9    9.    POST-CONFIRMATION FINANCIAL CONDITION OF THE DEBTOR. . . . .    18

10    10.    POST-CONFIRMATION MANAGEMENT OF THE DEBTOR. . . . . . . . . . . .    19

11    11.    ALTERNATIVES TO THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

12    12.    CERTAIN RISKS TO BE CONSIDERED . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

13    12.1    Risk of Non-Confirmation of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

14    12.2    Non-Consensual Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

15    12.3    Tax Consequences of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

16    12.4    Projections of Operations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

17    12.5    Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

18    13.    CONFIRMATION OF THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

19    13.1    Confirmation of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

20    13.2    Objections to Confirmation of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

21

22

23

24

25

26

27

28

**Law Offices of**
**ALAN R. SMITH**
**505 Ridge Street**
**Reno, Nevada   89501**
**(775) 786-4579**

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd

-iii-

1    **1.      INTRODUCTION**

2           This Amended Disclosure Statement (hereinafter the "Disclosure Statement") is

3    provided to creditors by the connection with the solicitation of acceptances of the Debtor's

4    First Amended Plan of Reorganization (the "Plan"[1]), filed on **September 9, 2011**, or any

5    subsequent amended plan of reorganization.  The Debtor's reorganization case is under

6    Chapter 11 of the United States Code, and was initiated on **March 1, 2011**, in the United

7    States Bankruptcy Court for the District of Nevada, as **Case No. BK-N-11-50615-BTB.**

8    The Plan provides for the treatment of claims of creditors and interest of the equity

9    security holders[2].

10          The objective of a Chapter 11 bankruptcy case is to obtain Bankruptcy Court

11   approval of a plan of reorganization.  This process is referred to as confirmation of a

12   plan. A plan describes in detail (and in language appropriate for a legal contract) the

13   means for satisfying the claims against, and equity interests in, a Debtor.  After a plan has

14   been filed, the holders of such claims and equity securities that are "impaired" (a term

15   defined in Bankruptcy Code Section 1124 and discussed in more detail below) are

16   permitted to vote to accept or reject the plan.  Before a Debtor or other plan proponent can

17   solicit acceptances of a plan, Bankruptcy Code Section 1125 requires the Debtor or other

18   plan proponent(s) to prepare a disclosure statement containing adequate information of a

19   kind, and in sufficient detail, to enable those parties entitled to vote on the plan to make an

20   informed judgment about the plan and whether they should accept or reject the plan.

21          **1.1      Purpose of the Disclosure Statement**

22          The purpose of this Disclosure Statement is to ensure that claimants have adequate

23

24          [1]  Capitalized terms not otherwise defined herein will have the same meaning as are
25   ascribed to such terms in the Plan which is filed contemporaneously herewith.

26          [2] An equity security of the Debtor as the term is defined in Section 101(16) of the
27   Bankruptcy Code includes any ownership interest in the Debtor, including membership
     interests.

28

**Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579**

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd        -1-

1   information to enable each class to make an informed judgment about the Plan.  The assets

2   and liabilities of the Debtor are summarized herein.  To the extent the information

3   contained in this Disclosure Statement may be inconsistent with the Debtor's Statement of

4   Financial Affairs and (Amended) Schedule of Assets and Liabilities filed on January 10,

5   2011, or subsequent amendments thereto, this Disclosure Statement shall supersede such

6   Statements and Schedules (as may have been amended).

7       This Disclosure Statement describes the business background and operating history

8   of the Debtor before the filing of the case.  It also summarizes certain significant events

9   that have taken place during the case and describes the terms of the Plan, which divides

10  creditor claims and the interests of shareholders into classes and provides for the

11  satisfaction of allowed claims and interests.

12      The Court will set a time and date as the last day to file acceptances or rejections of

13  the Plan.  Thereafter, a hearing on confirmation of the Plan will be held in the United

14  States Bankruptcy Court for the District of Nevada, located at the U.S. Federal Building &

15  Courthouse, 300 Booth Street, Reno, Nevada.  Creditors may vote on the Plan by filling

16  out and mailing a special form of ballot.  The form of ballot and special instructions for

17  voting will be forthcoming upon approval of the Disclosure Statement by the Court.

18  Creditors are urged to carefully read the contents of this Disclosure Statement before

19  making a decision to accept or reject the Plan.

20          **1.2    Acceptance and Confirmation**

21      In order for the Debtor's Plan to be confirmed, each impaired class of claims or

22  interests must accept the Plan, except as set forth below.  In order for the Plan to be

23  deemed accepted, a majority in number and two-thirds in dollar amount of the claims of

24  each class of creditors impaired under the Plan of those that actually vote, must vote for

25  acceptance of the Plan.  Holders of claims who fail to vote are not counted as either

26  accepting or rejecting the Plan.

27      Classes of claims that are not "impaired" under a Plan are deemed to have accepted

28  the Plan.  Acceptances of the Plan are being solicited only from those persons who hold

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -2-

1  claims or interests in impaired classes.  A class is "impaired" if the legal, equitable or

2  contractual rights attaching to the claims or interests of that class are modified, other than

3  by curing defaults and reinstating maturities, or by payment in full in cash.

4       **1.3    Confirmation Without Acceptance By All Impaired Classes**

5       The Bankruptcy Code contains provisions for confirmation of a Plan even if the

6  Plan is not accepted by all impaired classes, as long as at least one impaired class of claims

7  has accepted the Plan, and the Plan otherwise complies with the provisions of the

8  Bankruptcy Code.  These "cram-down" provisions for confirmation of a Plan, despite the

9  non-acceptance of one or more impaired classes of claims or interest, are set forth in

10 § 1129(b) of the Bankruptcy Code.

11      If a class of unsecured claims rejects the Plan, it may still be confirmed so long as

12 the Plan provides that (i) each holder of a claim included in the rejecting class receive or

13 retain on account of that claim property which has a value, as of the Effective Date, equal

14 to the allowed amount of such claim; or that (ii) the holder of any claim or interest that is

15 junior to the claims of such class will not receive or retain on account of such junior claim

16 or interest any property at all.

17      If a class of secured claims rejects the Plan, it may still be confirmed so long as the

18 Plan provides (i) the holders of such claims retain the lien securing such claim; (ii) the

19 holders of such claims receive on account of such claims deferred cash payments totaling

20 at least the allowed amount of such claims, of a value, as of the Effective Date of the Plan,

21 of at least the value of such claimant's interest in the estate's interest in such property; (iii)

22 for the sale of the property in accordance with § 1129(b)(2)(A)(ii); or (iv) for the

23 realization by such claimants of the indubitable equivalent of the claim.

24      **1.4    Disclaimer**

25      No representations concerning the Debtor is authorized by the Debtor except as set

26 forth in this Disclosure Statement.  Any representations or inducements made to secure

27 your acceptance or rejection of the Plan other than as contained herein have not been

28 authorized and should not be relied upon by you in making your decision, and such

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd    -3-

1   additional representations and inducements should be reported to counsel for the Debtor,

2   who in turn should deliver such information to the Court for such action as may be deemed

3   appropriate.  The information contained herein has not been subjected to a certified audit.

4   The records kept by the Debtor and other information relied on herein are dependent upon

5   investigations and accounting performed by the Debtor and others employed by the

6   Debtor.  The Debtor is unable to warrant that the information contained herein is without

7   inaccuracy, although a great effort has been made to be accurate, and the Debtor believes

8   that the information contained herein is, in fact, accurate.

9   **2.**     **INFORMATION REGARDING THE CHAPTER 11 ESTATE**

10       **2.1**     **History of the Debtor and Events Leading to the Filing of the Chapter**

11           **11 Case**

12       The Debtor purchased the property known as the Lakeridge East Apartments, 6155

13   Plumas Street, Reno, Nevada (the "Property") in 1968.  In 2006 the Property was

14   refinanced through WBCMT in the original principal amount of $11,950,000.00.

15       The Debtor successfully operated its business until early 2009, when it began to

16   experience a decline in occupancy generally associated with the decline in the overall

17   national economy and the local economy.  As a result, the Debtor became delinquent in its

18   mortgage payments, which ultimately lead to a receivership proceeding being commenced

19   against the Debtor, and a non-judicial foreclosure proceeding against the Property.  The

20   filing of this Chapter 11 case stayed the foreclosure upon the Property.

21       **2.2**     **Ownership of Debtor and Its Management.**

22       The general partner of the Debtor is the Nathan and Virginia Topol Trust of April

23   1, 1985, owning 98%.  Nathan Topol and Virginia Topol are limited partners owning a

24   total of 2%.

25       **2.3**     **Co-Debtors**

26       Nathan Topol is a conditional guarantor of the obligation to WBCMT.

27   ///

28   ///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd    -4-

**3.      DEVELOPMENTS DURING THE COURSE OF THIS CHAPTER 11 CASE**

**3.1      Meeting of Creditors**

The United States Trustee conducted a meeting of creditors pursuant to 11 U.S.C.
§ 341 on April 4, 2011.  The Debtor appeared through its representative Byron Topol.

**3.2      Schedules and Statement of Affairs**

The Debtor filed its schedule of assets and liabilities and statement of financial
affairs on March 1, 2011.  Those schedules and statements may be viewed online at
www.nvb.uscourts.gov or may be obtained from the Bankruptcy Clerk for a fee.

**3.3      Monthly Operating Reports**

Monthly operating reports reflecting the Debtor's ongoing financial status are filed
with the United States Bankruptcy Court and can be viewed online at
www.nvb.uscourts.gov.

**3.4      Employment of General Counsel**

The Debtor has noticed its application to employ Alan R. Smith, Esq., as its counsel
and to objections were filed.  An order employing counsel is expected to be entered
shortly.

**3.5      Creditors Committee**

An unsecured creditor's committee has not been formed in this case..

**3.6      Use of Cash Collateral**

The Property has continued to be operated by a receiver for WBCMT, and
accordingly there are no cash collateral issues.

**3.7      Motion To Retain Receiver**

On March 10, 2011, WBCMT 2006 - C27 Plumas Street, LLC ("WBCMT"), filed
its Motion for Entry of Order Pursuant to 11 U.S.C. § 543(d)(1) Maintaining Terrence S.
Daly As Custodian In Possession And Control Of Debtor's Real Property, And Excusing
Custodian From Compliance With 11 U.S.C. § 543(a) and (b) [Dkt. 14].  The Debtor
opposed the motion, and the matter was heard on April 14, 2011.  After considering the
pleadings, arguments and evidence, the Court granted the motion and ordered that the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -5-

receiver be retained.

4.    **DESCRIPTION OF ASSETS**

4.1    **Description of Real Property**

| Description Type | Assessor's Parcel # | Estimated Value[3] |
|---|---|---|
| Lakeridge West Apartments comprised of 126 apartment units located at 6155 Plumas Street, Reno, Nevada | 042-182-01 through 16 042-181-01 through 41 042-171-01 through 32 042-172-01 through 10 104-183-01 through 27 | $10,000,000.00 |

4.2    **Description of Personal Property**

| Description | Location | Est. Current Value |
|---|---|---|
| Checking Account | Bank of the West, Reno Branch, Kietzke | $          0.00 |
| Checking Account | City National Bank Debtor-In-Possession account | $        100.00 |
| Checking Account | City National Bank Operating account | $        100.00 |
| Checking Account | City National Bank Security account | $        100.00 |
| Security Deposits | Held by receiver | $     24,930.00 |
| 2008 Chevrolet Colorado | Vehicle previously used in connection with maintenance and operation of property and not for personal use. Under Debtor's Plan, vehicles will continue to be used for maintenance and operation of property. | $     15,000.00 |

---

[3]This is the Debtor's initial estimate only. May be revised based upon a current appraisal to be obtained by the Debtor, or if the value is determined by the Court.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -6-

| 2007 Ford Ranger | Vehicle previously used in connection with maintenance and operation of property and not for personal use.  Under Debtor's Plan, vehicles will continue to be used for maintenance and operation of property. | $          7,500.00 |
|---|---|---|
| 2006 Ford E250 Van | Vehicle previously used in connection with maintenance and operation of property and not for personal use.  Under Debtor's Plan, vehicles will continue to be used for maintenance and operation of property. | $          6,500.00 |
| 2006 Ford Ranger | Vehicle previously used in connection with maintenance and operation of property and not for personal use.  Under Debtor's Plan, vehicles will continue to be used for maintenance and operation of property. | $          6,300.00 |
| Apartment appliances (refrigerators, dishwashers, washers/dryers) | | $       110,000.00 |
| Potential claim against Nathan Topol for recovery of preferential payments. | Not applicable. | Unknown[4] |
| | **TOTAL:** | $       170,530.00 |

5.    **DESCRIPTION OF DEBTS**

5.1    **Administrative Claims**

(A)    Attorneys Fees/Law Offices of Alan R. Smith.    The Debtor will be obligated to pay attorneys fees and costs owed to the Law Offices of Alan R. Smith, subject to Court approval.  The Debtor estimates that attorneys fees will be incurred prior

---

[4]From March 1, 2010 to February 28, 2011, Nathan Topol or affiliates of his received a total of $383,908.00, plus a management fee of $34,500.00.  Within such period, Nathan Topol repaid the Debtor $201,982.00, leaving the sum of $181,926.00 as a possible preferential payment.  The Debtor has been informed by Jeffrey Hartman, Esq., Nathan Topol's counsel; that Nathan Topol is insolvent, and may seek relief under the Bankruptcy Code.  A judgment in excess of $4,000,000.00 was recently entered against Mr. Topol.  Accordingly, the Debtor is unable to assign any value to this asset.

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -7-

to Plan confirmation, but is unable to project the final balance at this time.

(B)    U.S. Trustee Fees.  All fees required to be paid to the United States Trustee will be paid in full upon the Effective Date of the Debtor's Plan.  Payment of U.S. Trustee fees in this case are current.

**5.2    Priority Claims**

The Debtor estimates priority claims owed as follows:

| Creditor | Nature of Lien | Estimated Amount of Priority Claim |
|---|---|---|
| Nevada Department of Taxation | Business Taxes | $        2,771.00 |
| TOTAL PRIORITY CLAIMS | | **$        2,771.00** |

**5.3    Secured Claims**

The Debtor has scheduled against it the following secured claims:

| Creditor | Nature of Lien | Est. Amount of Secured Claim |
|---|---|---|
| WBCMT | First Deed of Trust | $        14,242,985.81 |

| Creditor | Balance Owed | Interest Rate | Maturity Date | Original Terms |
|---|---|---|---|---|
| Ford Motor Company | $3,363.00 | 1.90 | 7/23/11 | 5 yr principal & interest |
| Ford Motor Company | $3,129.00 | 0.00 | 9/22/11 | 5 yr principal only 0% |
| Ford Motor Company | $11,257.00 | 1.90 | 6/22/12 | 5 yr principal & interest |
| Ally (formerly GMAC) | $10,917.00 | 5.50 | 7/11/13 | 5 yr principal & interest |
| **TOTAL SECURED CLAIMS** | | | | **$14,271,651.81** |

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd      -8-

### 5.4    Unsecured Claims

The Debtor has scheduled against it the following unsecured claims.

| Creditor | Basis of Claim | Scheduled Amount of Claim | Proof of Claim Amount |
|---|---|---|---|
| WBCMT | Promissory Note - estimated deficiency | $4,242,985.81 | $14,242,985.81 |
| Air Filter Sales & Serv | Goods/Services | $35.44 | |
| Appliance Parts | Goods/Services | $668.37 | $786.48 |
| Comyns, Smith, McCleary & Co. | Goods/Services | $10,000.00 | |
| Consumer Source, Inc. | Goods/Services | $11,690.00 | |
| Discount Tire | Goods/Services | $354.86 | |
| Dunseath Key Co. | Goods/Services | $54.99 | |
| Easy Rooter | Goods/Services | $85.00 | |
| Fairway Construction Company | Goods/Services | $11,496.00 | |
| Firstcomp | Goods/Services | $980.00 | |
| Floors R Us | Goods/Services | $733.35 | |
| Fuller Color Center | Goods/Services | $661.09 | |
| GE Appliance | Goods/Services | $298.40 | $298.40 |
| Graybar | Goods/Services | $251.59 | |
| Hutch's Mission Car Wash | Goods/Services | $29.92 | |
| Inland Supply | Goods/Services | $115.80 | |
| Jones Vargas | Goods/Services | $8,383.96 | $16,258.98 |
| Kleaning Connection | Goods/Services | $520.00 | |
| Lakeridge Tennis Club, Inc. | Past due fees for use of club. | $1,603,701.00 | |
| Landlord Protection Service | Goods/Services | $438.00 | |
| Lowe's Business Account | Goods/Services | $289.64 | |
| Marketing Design Works | Goods/Services | $2,400.00 | |
| Morris Peterson | Goods/Services | $1,587.41 | |

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd    -9-

| Creditor | Basis of Claim | Scheduled Amount of Claim | Proof of Claim Amount |
|---|---|---|---|
| Pacific States Communications | Goods/Services | $568.86 | |
| Pool Water Products | Goods/Services | $129.54 | |
| Professional Communications | Goods/Services | $452.93 | |
| Quick Smog | Goods/Services | $70.00 | |
| Rapid Refill | Goods/Services | $44.15 | |
| Reimer Pest & Weed | Goods/Services | $675.00 | |
| Sam's Club | Goods/Services | $852.63 | |
| Sierra Welding Supply | Goods/Services | $43.53 | |
| Nathan L. Topol | Loan | $1,090,235.79 | |
| Nathan L. Topol | Loan | $299,356.90 | |
| Victor Illuminating | Goods/Services | $344.00 | $344.00 |
| Ward Young | Goods/Services | $19,569.92 | |
| **TOTAL UNSECURED CLAIMS:** | | **$7,310,103.88** | **$14,260,673.67** |

### 5.5    Claims Deadline

In accordance with the Bankruptcy Court's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines filed on March 1, 2011, the deadline for filing a proof of claim for all creditors in this action is May 31, 2011, and August 29, 2011 for governmental agencies.

### 6.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is a party to the following executory contracts:

| Executory Contract  Name and Address | Description |
|---|---|
| AT&T Operations, Inc. | Marketing and Service Contract |

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd        -10-

| Tenant Leases | All leases with tenants of the Property. |
| Lakeridge Tennis Club, Inc. | Agreement for use of the Lakeridge Tennis Club - copy of which is attached hereto as **Exhibit "A."** |

**7.    DESCRIPTION OF PENDING AND COMPLETED LITIGATION**

The following is a description of the pending pre-petition litigation against the Debtor:

*WBCMT 2006 - C27 Plumas Street, LLC v. Tee Investments Company, LP*, CV10-01355, Complaint for specific performance and appointment of receiver, among other relief.

**8.    SUMMARY OF AMENDED PLAN OF REORGANIZATION**

**THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN OF REORGANIZATION WHICH IS FILED CONCURRENTLY HEREWITH (the "Plan"), AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. THE SUMMARY IS NOT COMPLETE, AND CREDITORS ARE URGED TO READ THE PLAN IN FULL.  A COPY OF THE AMENDED PLAN OF REORGANIZATION WILL BE PROVIDED TO ALL CREDITORS. TO THE EXTENT THE FOLLOWING SUMMARY INCLUDES DEFINED TERMS, THOSE DEFINITIONS ARE INCLUDED IN THE PLAN FILED CONCURRENTLY HEREWITH.  ALL CAPITALIZED TERMS HEREINAFTER HAVE THE MEANINGS SET FORTH IN THE PLAN.**

**8.1    Classification and Treatment of Claims**

The Plan designates seven (7) classes of claims.  Those classes take into account the differing nature and priority of the various classified claims under the Bankruptcy

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd    -11-

Code.

The following table briefly summarizes the classification and treatment of all Claims under the Plan and the consideration distributable on account of such Claims under the Plan. The information set forth in the following table is for convenience of reference only, and each holder of a Claim should refer to the Plan for a full understanding of the classification and treatment of Claims provided for under the Plan. Claims will receive designated treatment within a Class only to the extent Allowed within that class. The Claim allowance procedure is an ongoing process and the actual amount of the Allowed Claims may vary from the estimates.

| CLASS | CLAIMS | SUMMARY OF TREATMENT |
| --- | --- | --- |
| Nonclassified | Administrative Expenses | Paid in full on the latest of (a) on or before the Effective Date; (b) when due or such later date as approved by the claimant; or (c) when allowed by Final Order |
| Nonclassified | Administrative Claims | See Section 8.2.8(A) below |
| Nonclassified | Priority Claims | See Section 8.2.8(C) below |
| Class 1 | Secured Claim of WBCMT | See Section 8.2.1 below |
| Class 2 | Secured Claim of Ford Motor Credit | See Section 8.2.2 below |
| Class 3 | Secured Claim of Ford Motor Credit | See Section 8.2.3 below |
| Class 4 | Secured Claim of Ford Motor Credit | See Section 8.2.4 below |
| Class 5 | Secured Claim of GMAC | See Section 8.2.5 below |
| Class 6 | Unsecured Claims | See Section 8.2.6 below |
| Class 7 | Membership Interest | Receives no distribution until Class 1 through 6 are paid in full. See Section 8.2.7 below |

**8.2    Treatment of Claims and Interests**

Each creditor class shall be treated as follows:

**8.2.1   Class 1 (WBCMT Secured Claim):**

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -12-

1    The WBCMT Secured Claim of WBCMT 2006 - C27 Plumas Street, LLC

2 ("WBCMT") shall be treated under the Plan as follows:

3    **(A)    Amount of the WBCMT Secured Claim**

4    The amount of the WBCMT Secured Claim shall be the lesser of the value

5 of the Property determined as of the Confirmation Date (the "Value as of Confirmation

6 Date") or the WBCMT Note Balance.

7    **(B)    Retention of Security Interest in Property**

8    WBCMT shall retain its security interest in the Property as evidenced by the

9 WBCMT Deed of Trust.

10    **(C)    Payment of the WBCMT Secured Claim**

11    The WBCMT Secured Claim shall bear interest at the rate of 4.25% per

12 annum from and after the Effective Date, or, in the event of objection by the Class 1

13 creditor, such other rate as the Court shall determine is appropriate after considering the

14 evidence at the Confirmation Hearing (the "WBCMT Interest Rate").  On or before the

15 15th day of each and every month, commencing on the 15th day of the next month

16 following the Effective Date, the Debtor shall distribute to WBCMT an amount equal to

17 the normal amortized monthly payment based upon the WBCMT Interest Rate and a 30-

18 year amortized mortgage term (the "Monthly Class 1 Payment").

19    **(D)    Payment of the Balance Due on the WBCMT Secured**

20          **Claim**

21    The balance owed on the WBCMT Secured Claim, together with any and all

22 accrued interest, fees and costs due thereunder, shall be paid on or before ten (10) years

23 following the Effective Date, or such other date as may be proposed by the Debtor and

24 approved by the court at the Confirmation Hearing (the "WBCMT Maturity Date"), by the

25 means as set forth in Section 7 below.

26    **(E)    Loan Documents Remain In Effect**

27    The WBCMT Note and the WBCMT Deed of Trust shall remain in full

28 force and effect, except as modified by or otherwise inconsistent with this Plan, in which

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -13-

1   event the terms of this Plan shall supersede.

2                                     **(F)     Plan Default**

3              In the event of a default by the Debtor under the Plan, and in the event

4   Debtor fails to cure such default within fifteen (15) business days after delivery of notice

5   to the Debtor and to Debtor's counsel, WBCMT shall be entitled to enforce all of the

6   terms of the WBCMT Deed of Trust and the WBCMT Note, in addition to all rights

7   available under Nevada law, including, without limitation, foreclosure upon the Property

8   and the opportunity to credit bid the entire amount of the WBCMT Note at any foreclosure

9   sale.

10                                 **(G)     No Release Of Guarantors**

11              This Plan shall not release any guarantors of any of the debts identified

12   herein, and shall specifically not release Nate Topol of any guarantee that he may have of

13   the WBCMT debt.

14                            **(H)     Effect Of Election Under 1111(b)(2)**

15              In the event WBCMT makes a timely election under Section 1111(b)(2) of

16   the code, and the same is allowed by the Court, then as of the WBCMT Maturity Date, the

17   balance paid to WBCMT shall be the greater of I) the balance owed on the WBCMT

18   Secured Claim as of the WBCMT Maturity Date; or ii) the WBCMT Note Balance less the

19   total of all payments received by WBCMT Post-Petition.

20                  **8.2.2  Class 2 (Ford Motor Credit - 2007 Ford Ranger):**

21              The Class 2 claimant shall retain its existing security interest in the 1007

22   Ford Ranger.  The Allowed Secured Claim shall bear interest at the rate of 6% per annum,

23   or, in the event of objection by the Class 2 creditor, such other rate as the Court shall deem

24   appropriate after consideration of the evidence at the Confirmation Hearing (the "Class 2

25   Interest Rate").  The Allowed Secured Claim shall be amortized with equal monthly

26   payments over a period of two years, or such other period as may be proposed by the

27   Debtor at the Confirmation Hearing and approved by the Court.  Payments shall

28   commence on the first business day at least 15 days following the Effective Date.  To the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd    -14-

extent unaltered by the terms and conditions of this Plan, the existing promissory note and security agreement with the Class 2 creditor shall remain in full force and effect.  In the event of default, the Class 2 creditor shall provide the Debtor with 10 days written notice of such default, and in the event such default remains uncured within 10 days, the Class 2 creditor shall be entitled to enforce all of the terms of its promissory note and security agreement, including repossession of the collateral.

### 8.2.3   Class 3 (Ford Motor Credit - 2006 Ford E250 Van):

The Class 3 claimant shall retain its existing security interest in the 1007 Ford Ranger.  The Allowed Secured Claim shall bear interest at the rate of 6% per annum, or, in the event of objection by the Class 3 creditor, such other rate as the Court shall deem appropriate after consideration of the evidence at the Confirmation Hearing (the "Class 3 Interest Rate").  The Allowed Secured Claim shall be amortized with equal monthly payments over a period of two years, or such other period as may be proposed by the Debtor at the Confirmation Hearing and approved by the Court.  Payments shall commence on the first business day at least 15 days following the Effective Date.  To the extent unaltered by the terms and conditions of this Plan, the existing promissory note and security agreement with the Class 3 creditor shall remain in full force and effect.  In the event of default, the Class 3 creditor shall provide the Debtor with 10 days written notice of such default, and in the event such default remains uncured within 10 days, the Class 3 creditor shall be entitled to enforce all of the terms of its promissory note and security agreement, including repossession of the collateral.

### 8.2.4   Class 4 (Ford Motor Credit - 2006 Ford Ranger):

The Class 4 claimant shall retain its existing security interest in the 1007 Ford Ranger.  The Allowed Secured Claim shall bear interest at the rate of 6% per annum, or, in the event of objection by the Class 4 creditor, such other rate as the Court shall deem appropriate after consideration of the evidence at the Confirmation Hearing (the "Class 4 Interest Rate").  The Allowed Secured Claim shall be amortized with equal monthly payments over a period of two years, or such other period as may be proposed by the

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -15-

1  Debtor at the Confirmation Hearing and approved by the Court.  Payments shall

2  commence on the first business day at least 15 days following the Effective Date.  To the

3  extent unaltered by the terms and conditions of this Plan, the existing promissory note and

4  security agreement with the Class 4 creditor shall remain in full force and effect.  In the

5  event of default, the Class 4 creditor shall provide the Debtor with 10 days written notice

6  of such default, and in the event such default remains uncured within 10 days, the Class 4

7  creditor shall be entitled to enforce all of the terms of its promissory note and security

8  agreement, including repossession of the collateral.

9           **8.2.5   Class 5 (GMAC - 2008 Chevrolet Colorado):**

10          The Class 5 claimant shall retain its existing security interest in the 1007

11 Ford Ranger.  The Allowed Secured Claim shall bear interest at the rate of 6% per annum,

12 or, in the event of objection by the Class 5 creditor, such other rate as the Court shall deem

13 appropriate after consideration of the evidence at the Confirmation Hearing (the "Class 5

14 Interest Rate").  The Allowed Secured Claim shall be amortized with equal monthly

15 payments over a period of two years, or such other period as may be proposed by the

16 Debtor at the Confirmation Hearing and approved by the Court.  Payments shall

17 commence on the first business day at least 15 days following the Effective Date.  To the

18 extent unaltered by the terms and conditions of this Plan, the existing promissory note and

19 security agreement with the Class 5 creditor shall remain in full force and effect.  In the

20 event of default, the Class 5 creditor shall provide the Debtor with 10 days written notice

21 of such default, and in the event such default remains uncured within 10 days, the Class 5

22 creditor shall be entitled to enforce all of the terms of its promissory note and security

23 agreement, including repossession of the collateral.

24          **8.2.6   Class 6 (Unsecured Claims):**

25          Allowed Unsecured Claims shall receive a prorata distribution of the Equity

26 Contribution as described in Section 7.1 below (the "Unsecured Creditor Contribution").

27 The Debtor may propose a greater distribution amount at or before the time of the

28 Confirmation Hearing.

**Law Offices of**
**ALAN R. SMITH**
**505 Ridge Street**
**Reno, Nevada  89501**
**(775) 786-4579**

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -16-

1    **8.2.7   Class 7 (Membership Interests):**

2    The members shall retain their membership interests in the Reorganized Debtor, but

3    shall receive no distribution until Classes 1 through 6 are paid in full.

4    **8.2.8   Treatment of Unclassified Claims:**

5    **(A)    Administrative Claims**

6    Claims arising during the administration of the Debtor's Chapter 11 case and

7    entitled to priority under Section 507(a)(1) of the Bankruptcy Code are not classified under

8    the Plan.  Holders of such claims shall be paid in full on the latter of the Effective Date, or

9    fifteen (15) days after entry of an order creating an Allowed Administrative Claim, unless

10    holders of an Allowed Administrative Claim agree to alternative treatment.  Allowed

11    Administrative Claims may be paid by the members of the Debtor.

12    **(B)    Fees to the United States Trustee**

13    All fees required to be paid to the United States Trustee will be paid in full upon the

14    Effective Date of the Debtor's Plan, and shall remain current until the case is fully

15    administered, closed, converted or dismissed, whichever occurs first.  Such fees may be

16    paid by cash contributions by the member of the Debtor.

17    **(C)    Priority Claims**

18    Allowed Priority Claims shall be paid in full within 60 months following the

19    Effective Date, with interest, as provided by 11 U.S.C. §1129(a)(9).

20    **(D)    Disputed Claims**

21    All payments hereunder to creditors whose claims are not liquidated or are disputed

22    shall be paid into a segregated trust account until such claims are an Allowed Claim, in

23    which case the proceeds shall be disbursed, or such claim shall be disallowed.

24    **8.3    Executory Contracts**

25    All executory contracts of the Debtor are assumed, and shall be maintained current.

26    **8.4    Means of Implementing and Funding The Plan**

27    **8.4.1   Contribution From Members or Affiliates**

28

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -17-

1    The Debtor's members or affiliates shall contribute the sum of $75,000.00 (the

2  "Equity Contribution"), of which $50,000.00 shall be distributed to unsecured creditors as

3  set forth in Section 8.2 (G) above (the "Unsecured Creditor Contribution").  Such sum

4  shall be deposited into a segregated trust account prior tot he Plan confirmation.

5                        **8.4.2   Continued Operation**

6    The Plan will be funded by the Debtor's income from the ongoing operation of its

7  business.  Debtor anticipates that this will be sufficient to make the payments due of the

8  Class 1, 3, 4 and 5 claims.

9                        **8.4.3   Sale or Refinance of Property**

10    The Debtor will sell or refinance the Property before the WBCMT Maturity Date.

11  The proceeds from such sale or refinance shall be used to fund the Plan as set forth herein.

12                        **8.4.4   Disputed Claims**

13    All sums contemplated to be paid under the Plan to creditors whose claims are not

14  liquidated or are disputed shall be paid into a segregated trust account until such claims are

15  an Allowed Claim, in which case the proceeds shall be disbursed, or such claim shall be

16  disallowed.

17                        **8.4.5   Revesting of Assets in the Debtor**

18    Upon confirmation of the Plan, all property of the estate of the Debtor shall be

19  revested in the Debtor, pursuant to 11 U.S.C. § 1141(c), which shall retain such property

20  as the Reorganized Debtor free and clear of all claims and interests of the creditors, except

21  as set forth in the Plan.

22                        **8.4.6   Disbursing Agent**

23    The Debtor will serve as disbursing agent and shall make all payments required

24  under the Plan.  The disbursing agent may employ or contract with other entities to assist

25  in or to perform the distribution of the property and shall serve without bond.

26  **9.   POST-CONFIRMATION FINANCIAL CONDITION OF THE DEBTOR**

27    Following Plan confirmation, the Debtor believes that its post-confirmation

28  financial condition shall be as set forth in the Post-Petition Balance Sheet attached to the

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -18-

1  Disclosure Statement as **Exhibit "B"**

2  **10.    POST-CONFIRMATION MANAGEMENT OF THE DEBTOR**

3       The Debtor shall manage the Property Post Confirmation, and may employ such

4  persons as it deems necessary for effective management.

5  **11.    ALTERNATIVES TO THE PLAN**

6       The Debtor believes that the Plan provides its creditors with the earliest and

7  greatest possible value that can be realized on their claims.

8       Under § 1121 of the Bankruptcy Code, the Debtor has the exclusive right to file a

9  plan of reorganization during the first 120 days after commencement of its Chapter 11

10  case, or as otherwise extended by the Court.  The Plan was filed within such 120 day

11  period.  In addition, if the Plan is not accepted, other parties in interest may have an

12  opportunity to file an alternative plan of reorganization.

13       Alternatively, a liquidation of the Debtor's assets could be conducted as described

14  in Section 12.5 of this Disclosure Statement.  For the reasons described in that section,

15  Debtor believes that the distribution to each impaired class under the Plan will be greater

16  and earlier than distributions that might be received in a Chapter 7 liquidation of the

17  Debtor's assets.

18  **12.    CERTAIN RISKS TO BE CONSIDERED**

19       HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND

20  CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE

21  OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND

22  THE DOCUMENTS ATTACHED OR DELIVERED HEREWITH AND/OR

23  INCORPORATED HEREIN BY REFERENCE), IN DETERMINING WHETHER OR

24  NOT TO ACCEPT OR REJECT THE DEBTOR'S PLAN.  THESE RISK FACTORS

25  SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY

26  RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS

27  IMPLEMENTATION.

28       **12.1    Risk of Non-Confirmation of the Plan**

**Law Offices of**
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -19-

1    Because the Plan provides for the reorganization of the Debtor as a going concern,

2  many of the common risk factors found in typical reorganizations apply with respect to the

3  Plan.  These include (a) the value of the Debtor's property has suffered significantly as a

4  result of the downturn in the United States economy since the summer of 2009.  There is

5  no assurance that the Debtor's projections of the stabilized income from the Property will

6  occur, or that these projections will occur within the time period projected in the Plan; (c)

7  because the Plan is dependent on continued apartment rentals at the Property, there is a

8  risk that the projections of net operating income, with which to pay the Allowed Claims of

9  Creditors, may not be met; (d)  if WBCMT is not paid in accordance with the Plan, and the

10  Debtor is unable to sell the Property or to secure alternative financing, WBCMT may

11  foreclose on the Property.  Debtor is unaware of any regulatory contingencies or risks in

12  connection with the Plan.

13        **12.2    Non-Consensual Confirmation**

14    In the event one or more impaired Classes of Claims does not accept the Plan, the

15  Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request, if all other

16  conditions for confirmation have been met and at least one impaired Class has accepted

17  the Plan (such acceptance being determined without including the vote of any "insider" in

18  such Class) and, as to each impaired Class that has not accepted the Plan "does not

19  discriminate unfairly" and is "fair and equitable" with respect to the rejecting impaired

20  classes.  The Debtor believes that the Plan satisfies those requirements.

21        **12.3    Tax Consequences of the Plan**

22    The Debtor believes that there are no federal income tax consequences peculiar to

23  its Plan.  EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT WITH

24  HIS/HER TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND

25  FOREIGN TAX CONSEQUENCES TO HIM/HER OF THE PLAN.

26        **12.4    Projections of Operations**

27    The Debtor's projection of its future income and expenses is set forth in **Exhibit**

28  **"C"** attached hereto.  Those projections are based upon historical operations and projected

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd        -20-

1   increase in room rentals up to a stabilized level.

2       **12.5   Liquidation Analysis**

3       Should the Debtor be forced to terminate its business operations or convert its case

4   to Chapter 7 and have a trustee conduct the liquidation of its assets, Debtor estimates that

5   such a liquidation will result in payment only to WBCMT on its secured claim (Class 1

6   creditor) and no distribution to any of the other creditors (Classes 2, 3, 4, 5, and 6).  This is

7   because Debtor will be unable to obtain any financing, which will lead to foreclosure on

8   the Property and the personal property.  The only other asset of the Debtor is a claim

9   against the general partner, the Nathan Topol and Virginia Topol Trust of April 1, 1985

10  (the "Trust").  The Trust is represented by Jeffrey Hartman, Esq.  The Debtor has been

11  advised that the Trust is insolvent, but the Trust has been unwilling to provide a balance

12  sheet or more detailed information.  Accordingly, the Debtor believes there is no value to

13  such claim, however without actually commencing a lawsuit the Debtor is unable to obtain

14  additional information.  The Debtor believes the value of the Property can only be

15  enhanced by continued operation of the Property, reaching stabilized occupancy, and a

16  more favorable economic environment.

17  **13.   <u>CONFIRMATION OF THE PLAN</u>**

18      **13.1   Confirmation of the Plan**

19      Pursuant to Section 1128(a) of the Bankruptcy Code, the Bankruptcy Court will

20  conduct a hearing regarding confirmation of the Plan at the United States Bankruptcy

21  Court, 300 Booth Street, Reno, Nevada 89509, pursuant to separate notice provided to

22  creditors and interested parties.

23      **13.2   Objections to Confirmation of the Plan.**

24      Section 1128(b) provides that any party-in-interest may object to confirmation of a

25  plan.  Any objections to confirmation of the Plan must be in writing, must state with

26  specificity the grounds for any such objections and must be filed with the Bankruptcy

27  Court and served upon the following parties so as to be received on or before the time

28  fixed by the Bankruptcy Court:

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd          -21-

1
2
3
4

Alan R. Smith, Esq.
505 Ridge Street
Reno, Nevada 89501
Telephone: 775/786-4579
Facsimile:  775/786-3066
Email: mail@asmithlaw.com

5   For the Plan to be confirmed, the Plan must satisfy the requirements stated in Section 1129

6   of the Bankruptcy Code.

7       **DATED** this 9th day of September, 2011.

8                                    LAW OFFICES OF ALAN R. SMITH

9                                    By:_____*/s/ Alan R. Smith*_____
10                                        ALAN R. SMITH, ESQ.
                                         Counsel for Debtor

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd     -22-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

**USE AGREEMENT**

**EXHIBIT "B"**

**POST-PETITION BALANCE SHEET**

ASSETS:

| | | |
|---|---|---|
| Personal Property | $ | 116,480.00 |
| Real Property | $ | 10,000,000.00 |

TOTAL ASSETS:    $    10,116,480.00

LIABILITIES:

| | | |
|---|---|---|
| Secured Debts | $ | 10,028,666.00 |
| Unsecured Debts | $ | 0.00 |

TOTAL LIABILITIES    $    10,028,666.00

**NET ASSETS OVER LIABILITIES**    **$    87,814.00**

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "C"**

**PROJECTED MONTHLY NET INCOME**

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\Plan & DS\DS (amd) (v2) 082611-dlg.wpd    -25-