ALAN R. SMITH, ESQ.
Nevada Bar No. 1449
Law Offices of Alan R. Smith
505 Ridge Street
Reno, Nevada 89501
Telephone (775) 786-4579
Facsimile (775) 786-3066
Email: mail@asmithlaw.com

*ELECTRONICALLY FILED*
*October ____, 2011*

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

—ooOoo—

| | |
|---|---|
| In Re: | Case No. BK-N-11-50615-BTB |
| TEE INVESTMENT COMPANY, Limited Partnership, dba LAKERIDGE APARTMENTS, | Chapter 11 |
| Debtor. | **OPPOSITION TO MOTION OF WBCMT 2006-C27 PLUMAS STREET, LLC FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)(1), (d)(2) AND (d)(3)** |
| _____/ | Hearing Date: October 25, 2011<br>Hearing Time: 10:00 a.m. |

Debtor, TEE INVESTMENT COMPANY, Limited Partnership, dba LAKERIDGE APARTMENTS, by and through its counsel, Alan R. Smith, Esq., of the Law Offices of Alan R. Smith, hereby opposes the Motion Of WBCMT 2006-C27 Plumas Street, LLC For Relief From Stay Pursuant To 11 U.S.C. § 362(d)(1), (d)(2) And (d)(3) (the "Motion"). This opposition is based upon the following points and authorities.

**POINTS AND AUTHORITIES**

1. **Factual Background.**

For the purposes of this Motion for relief from stay, the Debtor agrees to certain facts as stated by WBCMT 20060C27 Plumas Street, LLC (hereinafter "Lender"). Debtor agrees that the amount owed to the Lender is $14,242,985.81, however the Debtor has not yet seen an accounting to support this figure and reserves the right to object at a

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Tee Investment\MRS (WBCMT)\Opp MRS (WBCMT) 101111-dlg.wpd

1  later date.  The Debtor also agrees to a fair market value of the property located at 6900 -
2  6990 S. McCarran Blvd., Reno, Nevada, 89509 (the "Property") at $11,800,000.00 for the
3  purposes of this hearing only.  The Debtor is currently obtaining an appraisal of the
4  Property, which is scheduled to be completed by the end of October, and which may show
5  a substantially different valuation for the Property.  During the pendency of this Chapter
6  11 case the Property has been operated by Terrence S. Daly, a receiver for the Lender,
7  who also operated the Property pre-petition.  All rents have been collected by the receiver,
8  and the receiver has continued to pay the expenses associated with the Property.  The
9  Debtor's First Amended Disclosure Statement has been approved, and a plan
10 confirmation has been scheduled for January 26 and 27, 2011.

11 **2.    There Has Been No Improper Substitution Of General Partner.**

12     The general partner of the Debtor has not changed since the date the loan from the
13 Lender was obtained.  Previous representations that the Nathan and Virginia Topol Trust
14 of April 1, 1985 was a general partner were erroneous, and based upon misunderstood
15 facts. The general partner was, and remains, Nathan Topol.

16 **3.    The Debtor Is Not Acting For The Benefit Of Insiders.**

17     In a somewhat unfocused argument, Lender argues that Debtor is acting for the
18 benefit of insiders.  Apparently this is based upon the fact that a debt is listed in favor of
19 the Tennis Club in the amount of $1,603,701.00.  There is no explanation by the Lender
20 of why the existence of this debt means that the Debtor is operating for the benefit of
21 insiders.  This is simply the debt that is owed, and the Debtor believes it is accurate.  If
22 the Lender disagrees, the Lender certainly could object to the claim.
23     Lender also claims that the Debtor is operating for the benefit of insiders because
24 it lists a potential preference claim against Nathan Topol in the amount of $181,926.00.
25 The plan does not propose to seek recovery of that claim.  However, it is important to
26 note that Nathan Topol and affiliates will provide the funding for the new value
27 contribution to the plan.  This argument is simply a diversionary tactic by the Lender.
28 The Lender likely has no interest in this potential recovery because the Lender's primary

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\MRS (WBCMT)\Opp MRS (WBCMT) 101111-dlg.wpd   - 2 -

1  concern is its ability and desire to foreclose upon the Property. Furthermore, the Debtor
2  does not have any funds to litigate against Nathan Topol as all funds are cash collateral of
3  the Lender, and the Lender has not offered to fund this litigation. The Debtor's best
4  interests are served by not pursuing litigation against Nathan Topol, and by receiving the
5  new value contribution in order to fund the plan.

**4.     The Debtor Intends To Repair The Property.**

7  The Debtor is well aware of the roof situation with regard to the Property. The
8  Debtor consistently and routinely maintained and repaired the roofs when the Property
9  was operated by the Debtor. *See* Declaration of Byron Topol In Support Of Opposition
10 To Motion Of WBCMT 2006-C27 Plumas Street, LLC For Relief From Stay Pursuant To
11 11 U.S.C. § 362(d)(1), (d)(2) and (d)(3) (the "Topol Declaration"). The Debtor does not
12 agree that a complete repair of the roofs is required. In the event the Debtor's plan is
13 confirmed, the Debtor intends to continue to maintain and repair the roofs as necessary.

**5.     The Debtor Commenced The Case In Good Faith.**

15 Lender argues that the Debtor commenced the case in bad faith. Interestingly, this
16 issue was not raised in either of the previous two objections to the Debtor's disclosure
17 statement. Furthermore, we are now seven months into the case, with a plan confirmation
18 hearing scheduled for January 26 and 27, 2011. It is a little late to be raising the issue
19 that the petition was filed in bad faith.

20 Furthermore, as Lender is likely aware, none of the cases cited by it support a
21 contention that the Debtor's petition was filed in bad faith in this case. For example, the
22 case of Laguna Assocs. L.P. v. Aetna Casualty & Surety Co. (In re Laguna Assocs. L.P.),
23 30 F.3d 734, 737 (6th Cir. 1994) concerns a pre-petition transfer of property to the debtor
24 in bad faith. In fact, the cases of Duvar Apt. v. FDIC (In re Duvar Apt.) 205 B.R. 196,
25 200 (B.A.P. 9th Cir. 1996) and In re West Shore Resort Props. III, LLC, No. 10-51101,
26 2010 Bankr. LEXIS 5968 at *5-7 (Bankr. D. Nev. Sept. 17, 2010) cited by the Lender
27 also concern the pre-petition transfer of property to the Debtor. The Lender neglects to
28 explain the clear connection that these cases have with the current case filed by the

Law Offices of
**ALAN R. SMITH**
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\MRS (WBCMT)\Opp MRS (WBCMT) 101111-dlg.wpd - 3 -

1  Debtor. The laundry list of factors cited by the Lender in support of its bad faith
2  argument are inapplicable to the Debtor's case. Furthermore, the Debtor clearly has
3  sufficient cash flow to sustain a plan of reorganization and make adequate protection
4  payments, and clearly has assistance of other secured creditors and unsecured creditors.
5  The argument of bad faith raised by the Lender is simply a "throw-in-the-kitchen-sink"
6  approach to a motion for relief from stay, without any cogent analysis of the cases or
7  applicability to the present case.

      **6.**    **Lender Is Adequately Protected.**

9        Lender argues that it is not adequately protected. Specifically, Lender argues that
10 the Debtor does not have equity in the Property, which is conceded by the Debtor.
11 However, Lender presents no evidence concerning the value of the Property. More
12 specifically, Lender presents absolutely no evidence indicating that the Property may be
13 declining in value. In fact, the occupancy percentage of the Property has increased over
14 the last year. *See* Topol Declaration. Furthermore, income from the Property continues
15 to increase. *See* Topol Declaration.

16       The Lender does not address the Property interest it holds that is entitled to
17 adequate protection. The undersecured creditor is not entitled to interest on its collateral
18 during the stay to assure adequate protection under § 362(d)(1); see <u>United Savings
19 Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.</u>, 484 U.S. 365; 108 S. Ct. 626;
20 98 L. Ed. 2d 740 (1988), (holding that undersecured creditors are not entitled to adequate
21 protection payments under 11 U.S.C. § 362(d)(1) for the delay caused by the automatic
22 stay in foreclosing on their collateral). In <u>Timbers</u>, the Court reasoned:

23     Finally, petitioner contends that failure to interpret § 362(d)(1) to require
    compensation of undersecured creditors for delay will create an
24     inconsistency in the Code in the (admittedly rare) case when the debtor
    proves solvent. When that occurs, 11 U.S.C. § 726(a)(5) provides that
25     postpetition interest is allowed on unsecured claims. Petitioner contends it
    would be absurd to allow postpetition interest on unsecured claims but not
26     on the secured portion of undersecured creditors' claims. It would be
    disingenuous to deny that this is an apparent anomaly, but it will occur so
27     rarely that it is more likely the produce of inadvertence than are the blatant
    inconsistencies petitioner's interpretation would produce. Its inequitable
28     effects, moreover, are entirely avoidable, since an undersecured creditor is

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Tee Investment\MRS (WBCMT)\Opp MRS (WBCMT) 101111-dlg.wpd - 4 -

1  entitled to "surrender or waive his security and prove his entire claim as an unsecured one." *United States Nat. Bank v. Chase Nat. Bank*, 331 U.S. 28, 34 (1947). Section 726(a)(5) therefore requires no more than that undersecured creditors receive postpetition interest from a solvent debtor on equal terms with unsecured creditors rather than ahead of them – which, is where the debtor is solvent, involves no hardship.

5  Id., at 484 U.S. 634-635.

6  The Debtor is only required to protect the value of the collateral itself. *Id. See also*, 3-362 Collier on Bankruptcy (15th ed. rev.), P 362.07. The amount of adequate protection to which an undersecured creditor is entitled is equal to the amount of depreciation its collateral suffers after it would have exercised its state law remedies. In re Deico Electronics, Inc., 139 B.R. 945 (B.A.P. 9th Cir. 1992); In re J.K. Chemicals, Inc., 108 B.R. 11 (Bankr. D.R.I. 1989). Where real Property is not depreciating in value, an undersecured creditor is adequately protected without the Debtor making any payments. *See*, In re Westchase I Assoc., L.P., 126 B.R. 692 (Bankr. W.D. N.C. 1991) (If the value of the Property itself is not declining, the creditor would not be entitled to protection of the accruing interest value of the claim); *accord*, In re Lane, 108 B.R. 6 (Bankr. D. Mass. 1989); In re Wolford Enterprises, Inc., 11 B.R. 571 (Bankr. S. D. W.V. 1981) (creditor protected while Property appreciating). Based on the above, the Lender is not entitled to adequate protection on the loan alleged to be unsecured.

19  Even if adequate protection were required, the Lender is receiving all of the rental income from the operation of the Property. As set forth in the Declaration of Terrence S. Daly, the receiver for the Lender, the Property currently generates $120,000.00 per month, with normal operating expenses and taxes of $48,000.00 per month leaving a net income of $72,000.00 per month. Lender argues that the value of the Property is $11,800,000.00. Applying a market rate of interest of 4.5% leads to a monthly payment of $44,250.00. It is well established that monthly payments of interest at market rate provides adequate protection for a secured claim. In re Cambridge Woodbridge Apts., 292 B.R. 832 (N.D. Ohio 2003).

///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\MRS (WBCMT)\Opp MRS (WBCMT) 101111-dlg.wpd - 5 -

### 7. The Debtor Has A Reasonable Possibility Of Confirming A Plan Of Reorganization.

As seems to be typical in present day motions for relief from stay, Lender argues that the plan is not confirmable. Lender does not even bother to argue that the plan is "patently" unconfirmable. This case was commenced on March 1, 2011. The Debtor filed is plan of reorganization and disclosure statement on May 31, 2011, which was subsequently amended on September 9, 2011. There have been two hearings on considering approval of the Debtor's disclosures statement. At the first hearing, on July 21, 2011, the Court considered the objections filed by the Lender, however counsel for the Lender did not appear. The Court ordered certain modifications be made to the disclosure statement, which was in fact done by the Debtor. A second hearing on approval of the Debtor's disclosure statement was set for September 30, 2011. Again the Lender filed another set of objections to the disclosure statement. At the hearing the Court found that the disclosure statement contained adequate information, and specifically found that the plan was not patently unconfirmable. The order of the Court approving the Debtor's First Amended Disclosure Statement is pending. A confirmation hearing has been scheduled for January 26 and 27, 2011. The Lender now seeks to argue plan confirmation matters in connection with this Motion for relief from stay. However, at the time of the Motion for relief from stay, the issue, whether raised in the context of Section 362(d)(2)(B) or Section 362(d)(3)(A), is whether there is a reasonable possibility of a successful reorganization within a reasonable time.

Both Sections 362(d)(2)(B) and 362(d)(3)(A) requires that the Debtor demonstrate that the subject property is "necessary to an effective reorganization." As set forth in <u>United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.</u>, 484 U.S. 365, 376 (1988) "This means, as many lower courts, including the en banc court in this case, have properly said, that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" In the context of § 362(d)(2)(B), the Debtor has the burden of proving that the subject property is necessary for an effective reorganization, and must

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\MRS (WBCMT)\Opp MRS (WBCMT) 101111-dlg.wpd - 6 -

1  show the existence of a reasonable possibility that a successful rehabilitation or a
2  successful liquidation can be accomplished within a reasonable period of time.  In re
3  Planned Systems, Inc., 78 B.R. 852 (Bankr. S.D. Ohio 1987).  The burden of proof is a
4  "moving target which is more difficult to attain as the Chapter 11 case progresses."  In re
5  Holly's, Inc., 140 B.R. 643 (Bankr. W.D. Mich. 1992).  In the early stage of the case, "the
6  burden of proof . . . is satisfied if the debtor can offer sufficient evidence to indicate that a
7  successful reorganization within a reasonable time is 'plausible'".  Id. at 701.  *See also,* In
8  re Sun Valley Newspapers, Inc., 171 B.R. 71, 75 (9th Cir. BAP 1994);  U.S. v. Hollie (In
9  re Hollie), 42 B.R. 111, 117 (Bankr. M.D. Ga. 1984) ("In the early stages of a bankruptcy
10 case, a court should balance the interest of the secured creditor against the congressional
11 policy favoring reorganization.  The court should be hesitant to find no reasonable
12 possibility of reorganization, especially where the debtor has not had sufficient time to
13 formulate a plan.").

14 The effective reorganization requirement enunciated by the Supreme Court merely
15 requires a showing by a debtor that a proposed or contemplated plan is not patently
16 unconfirmable and has a realistic chance of being confirmed.  *See* United Sav. Ass'n of
17 Tex. v. Timbers of Inwood Forest Assocs., Ltd., *supra*.  The court must therefore consider
18 whether the plan proposed patently violates the Code's requirement for confirmation.  Id.
19 While the § 1129(a)(11) feasibility standards are appropriate to consider at plan
20 confirmation, such consideration is not necessarily appropriate under § 362(d).  In the
21 Matter of Holly's, Inc., 140 B.R. 643 (Bankr. W.D. Mich. 1992).

22 The court in In re Windwood Heights, Inc., 385 B.R. 832, 838 (Bankr. N.D. W.V.
23 2008) analyzed what is required to prove a "reasonable possibility" of plan confirmation,
24 and concluded:

25 > In proving a "reasonable possibility" of plan confirmation, the stage of the proceeding assists in the showing a debtor must make: "'At a minimum the
26 > debtor must show that (1) it is proceeding to propose a plan of reorganization, (2) the proposed or contemplated plan has a realistic chance
27 > of being confirmed and (3) the proposed or contemplated plan is not patently unconfirmable.'" In re National/Northway Ltd. P'ship, 279 B.R.
28 > 17, 24 (Bankr. D. Mass. 2002) (citations omitted).  The court is not aware

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\MRS (WBCMT)\Opp MRS (WBCMT) 101111-dlg.wpd - 7 -

1  of any requirements, and will not impose one, that the plan filed at the time
2  the stay relief motion is pending is the only benchmark for determining
   whether or not stay relief is appropriate; rather, all that is required is that an
   effective reorganization be "in prospect," Timbers, 484 U.S. at 376, and be
3  attainable within a reasonable period of time.

4  Id., at 838.[1]

5  Importantly, adjudicating a relief from stay motion is not to be a mini-confirmation

6  hearing. In re Windwood Heights, Inc., 385 B.R. at 838. *See, e.g.,* In re LDN Corp., 191

7  B.R. 320, 325 (Bankr. E.D. Va. 1996 ("In the context of relief from stay litigation, the

8  analysis of the potential for a successful reorganization is not the same as the standard

9  employed at a confirmation hearing."). The court in In re Windwood Heights went on to

10 state:

11  At a confirmation hearing, a debtor must prove its entitlement to confirm a
    plan under 11 U.S.C. § 1129 by a preponderance of the evidence, and
12  concerning the plan feasibility requirement of § 1129(a)(11) in particular,
    the debtor must demonstrate that the confirmation of the plan is not "likely"
13  to be followed by liquidation or the need for further financial
    reorganization. *E.g.*, Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d
14  Cir. 1988) (stating that success need not be guaranteed – the possibility that
    a plan may fail is not fatal – but a plan must be supported by adequate
15  evidence that some reasonable assurance of success exists); In re
    Featherworks Corp., 25 B.R. 634, 642 (Bankr. S.D.N.Y. 1982) ("As the
16  proponent of the plan, the debtor had the burden of establishing that it met
    the requirement of the Code."), *aff'd* 36 B.R. 460 (E.D.N.Y. 1984). By
17  comparison, the showing required by a debtor under § 362(d)(3)(A) is only
    that the plan have a reasonable possibility of being confirmed, which is a
18  lesser showing than that required at confirmation. *E.g.*, In re Kent Terminal
    Corp., 166 B.R. 555, 560 (Bankr. S.D. N.Y. 1984) (analyzing a case under §
19  362(d)(2)(B) and concluding that "[i]n a run of the mill relief from stay
    motion, a debtor need not satisfy the higher level of scrutiny imposed at a
20  confirmation hearing. . . . [A]t confirmation. . . . most courts require that a
    plan offer a probability of success, rather than a mere possibility."). The
21  terms of § 362(d)(3)(A) have been characterized as "rather vague and
    hopeful." In re Hope Plantation Group, LLC, No. 07-1171, 2007 Bankr.
22  LEXIS 2381 at *12 (Bankr. D.S.C. June 14, 2007) ("[t]he terms . . .
    'reasonable possibility' within a 'reasonable time' are rather vague and
23  hopeful terms that require a far lower standard of proof that will be required
    of the Debtor [at the confirmation hearing].").
24
    Id., at 838. See also, In re 266 Washington Assocs., 141 B.R. 275, 281 (Bankr. E.D. N.Y.
25
    1992), *aff'd*, 1992 U.S. Dist. LEXIS 18977 (E.D. N.Y. Dec. 10, 1992); and John Hancock
26

27  ─────────────
        [1] Although the court was considering the application of §362(d)(3), it found the
28  standards were virtually identical to those in §362(d)(2)(B).

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Tee Investment\MRS (WBCMT)\Opp MRS (WBCMT) 101111-dlg.wpd - 8 -

1  Mutual Life Insurance Co. v. Route 37 Business Park Associates (In re Route 37 Business
2  Park Assoc.), 987 F.2d 154, 157 (3rd Cir. 1993).
3        The arguments relating to plan confirmation raised by the Lender are properly
4  addressed at the time of plan confirmation, not at the time of the Motion for relief from
5  stay hearing.  As set forth above, a relief from stay hearing should not be in essence a
6  mini confirmation hearing.  The Lender has raised several distinct issues regarding plan
7  confirmation.  Although not properly before the Court at this time, the Debtor
8  nevertheless will briefly address those issues below.

      **a.    Classes 2 Through 4 Are Impaired.**

10        Classes 2 through 5 in Debtor's plan relate to loans on trucks that were historically
11  used in the operation of the Debtor's business.  *See* Topol Declaration.  The obligation for
12  payment on the trucks was disclosed to the receiver following the receiver's appointment.
13  *See* Topol Declaration.  The existence of the obligation to pay for the trucks has never
14  been concealed.  *See* Topol Declaration.  The fact is that the receiver did not maintain his
15  own maintenance staff, but simply employed outside sources.  The Debtor always
16  maintained the Property itself, and used the trucks for that purpose prior to the
17  appointment of the receiver.  *See* Topol Declaration.  The debts for the trucks were
18  incurred by the Debtor for the purpose of maintaining the Property, and are currently in
19  default.  Under the Debtor's plan, the Debtor intends to maintain the property itself, and
20  use the trucks for such maintenance as it has done before.  It reasonable and common to
21  restructure small secured loans in the context of a plan of reorganization.  There is really
22  no alternative to restructuring the secured loans other than paying them in cash, which is
23  difficult as the Debtor's plan will be funded by new value contributions or relinquishment
24  of the trucks, which is inconsistent with the Debtor's intent to use the trucks in the
25  operation of the Property.  The Debtor will present further evidence concerning the
26  restructuring of the truck loans in connection with the plan confirmation hearing.  It is
27  submitted, however, that restructuring the truck debts under the Debtor's plan does not
28  render it patently unconfirmable.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Tee Investment\MRS (WBCMT)\Opp MRS (WBCMT) 101111-dlg.wpd - 9 -

      **b.**      **Confirmation Of Debtor's Plan Does Not Require An Accepting Vote From Class 6.**

Lender goes to a great length to explain that it holds the blocking vote in Class 6, the general unsecured creditors, and therefore that Class will not accept the plan. That is likely true. However, Section 1129(a)(10) requires only that "At least one class of claims that is impaired under the plan has accepted the plan." Debtor believes that it will have acceptance from Classes 2 through 5, which will satisfy the requirement of Section 1129(a)(10).

      **c.**      **The Plan Satisfies The New Value Exception To The Absolute Priority Rule.**

Lender acknowledges existence of the new value exception to the absolute priority rule. Lender simply argues that the proposed new value is not sufficient. That is clearly a plan confirmation issue that cannot be addressed in the context of a motion for relief from stay.

**8.**      **Conclusion.**

None of the grounds cited by the Lender warrant relief from the automatic stay. The Motion appears to be a very late attempt to remedy the fact that a motion was not filed earlier in the case. At this point, the case really centers around whether or not a plan can be confirmed. In light of the fact that the disclosure statement has been approved (after two sets of objections by the Lender which same arguments are re-hashed here again), and a plan confirmation has been scheduled for January 26 and 27, 2011, the matter should be determined at the time of the plan confirmation hearing. This Motion should be denied.

DATED this 11th day of October, 2011.

                                        LAW OFFICES OF ALAN R. SMITH

                                        */s/ Alan R. Smith*

                                        _____
                                        Alan R. Smith, Esq.
                                        Attorney for Debtor

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Tee Investment\MRS (WBCMT)\Opp MRS (WBCMT) 101111-dlg.wpd       - 10 -