HOLLY S. STOBERSKI (SBN 5490)
**DUANE MORRIS LLP**
100 North City Parkway, Suite 1560
Las Vegas, NV 89106-4617
Telephone: (702) 868-2600
Facsimile: (702) 385-6862
E-Mail: hstoberski@duanemorris.com

PHILLIP K. WANG (CA 186712)
*Admitted Pro Hac Vice*
**DUANE MORRIS LLP**
One Market Plaza
Spear Street Tower, Suite 2200
San Francisco, CA 94105-1127
Telephone: 415.957.3000
Facsimile: 415.957.3001
E-Mail: pwang@duanemorris.com

Attorneys for Secured Creditor
WBCMT 2006-C27 PLUMAS STREET, LLC

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA – RENO DIVISION

| | |
|---|---|
| In re | Case No. 3:11-BK-50615-BTB |
| TEE INVESTMENT COMPANY, Limited Partnership, dba LAKERIDGE APARTMENTS, | Chapter 11 |
| Debtor. | |
| WBCMT 2006-C27 PLUMAS STREET, LLC | **WBCMT 2006-C27 PLUMAS STREET, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(d)(1), (d)(2) AND (d)(3)** |
| Movant, | |
| v. | |
| TEE INVESTMENT COMPANY, Limited Partnership, dba LAKERIDGE APARTMENTS | Date:     October 25, 2011<br>Time:     10:00 a.m.<br>Place:    C. Clifton Young Federal Bldg.<br>          300 Booth Street<br>          Courtroom 2, 5th Floor<br>          Reno, NV 89509 |
| Respondent. | |

DM3\1941105.2 R1501/00047

Secured Creditor WBCMT 2006-C27 Plumas Street, LLC ("Secured Creditor"), by and through its counsel, Duane Morris LLP, hereby submits this reply to the debtor's ("Debtor") opposition (Docket No. 80) ("Opposition") to Secured Creditor's motion for relief from the automatic stay (Docket No. 61) ("Motion")[1], and represents as follows:

## I.    INTRODUCTION

Secured Creditor seeks relief from stay so that it may complete its loan enforcement remedies under state law and prevent the continuing decline in the value of its collateral.  There are multiple reasons that are more than sufficient to lift the automatic stay, including sections 362(d)(1) (for cause), (d)(2) (lack of equity in property/not necessary to reorganization) and (d)(3) (plan does not have reasonable possibility of confirmation/payments to Secured Creditor not commenced) of the Bankruptcy Code.

## II.    ARGUMENT

### A.    The Debtor is Acting for the Benefit of Insiders

Debtor's Opposition argues that Debtor is not acting for the benefit of insiders because:  (a) the undisputed, $1.6 million dollar claim listed in Schedule F as owing to the Tennis Club is legitimate; and (b) Debtor does not have the funds to seek recovery of claims against Nathan Topol. While the Use Agreement provides that access to the Tennis Club is based upon Debtor paying $100.00 per month, Debtor states that it "believes" that the $1.6 million claim owed to the Tennis Club is "accurate".  Debtor offers no explanation as to the basis for the claim of the Tennis Club, a club in which Topol and/or relatives of Topol have an interest (a Tamari Topol signed the Use Agreement as president of the Tennis Club and Nathan Topol signed the Use Agreement as general partner of the entity that leases the tennis club facility to the Tennis Club), for an obligation requiring a $100 monthly payment.  In its answers to the Secured Creditor's Requests to Admit, the Debtor admitted: (a) "the Use Agreement requires the Debtor to pay a total amount of one hundred dollars ($100) per month to the Tennis Club for use of the Tennis Club by the Debtor's tenants," and (b) "the Use Agreement does not require the Debtor to pay any amount over and above the $100 per month payment for use of the Tennis Club by Debtor's tenants."  (Response to Secured Creditor's

---

[1] Capitalized terms used herein and not otherwise defined shall have the definitions given to those terms in the Motion.

Requests for Admissions, Nos. 1 and 2, attached at <u>Exhibit A</u>.)  And for the avoidance of doubt, the scheduling and proposed payment of a claim of a related party in the amount of $1.6 million when that claim is questionable at best based on the terms of the Use Agreement and the Debtor's own admissions constitutes preferring an insider to the detriment of other creditors.  Passing the burden of objecting to the claim to other creditors does not cure this problem.

Debtor attempts to rebut Secured Creditor's argument that it is acting for the benefit of insiders in not pursuing claims against Topol by stating that it does not have the funds to seek recovery from Topol.  This does not explain the Debtor's continuing attempts to shield Topol from liability while readily conceding claims that Topol allegedly haS against the estate.  This is especially troublesome given the changing description of the claims.  Schedule F lists undisputed claims by Topol in the amount of $1,090,235.79, for "entitlement expenses for tentative map and special use permits," and $299,356.90 for "contributions," while the Disclosure Statement lists these claims as "loans."  Instead, Debtor simply relies on its lack of funds to pursue insiders as a basis for explaining away its favorable treatment of insiders to the detriment of its creditors.  The Debtor does not address at all why the claims against Topol at the very least should not be set off against the amounts the Debtor all too readily and inappropriate concedes it owes Topol.

### B.    The Property is in Disrepair

Despite the fact that the roof of the Property requires extensive repairs, Debtor argues that it will be able to maintain and repair the roof as necessary, stating that it does not believe a "complete repair" is necessary.  As stated in the Motion, a full repair of the roof would cost between $650-700,000 and even a temporary solution to the roofing problem will cost at least $100,000.  The Debtor does not illustrate the cost of the repairs it proposes or that it has the funds on hands to complete them.

### C.    The Debtor has Acted in Bad Faith

Debtor simply disregards Secured Creditor's analysis which shows that Debtor has acted in bad faith.  Debtor summarily states that "[t]he laundry list of factors cited by the Lender in support of its bad faith argument are inapplicable to the Debtor's case."  The "laundry list of factors" to which Debtor refers is the list of factors accepted by courts as a relevant basis for evaluating whether

a debtor has acted in bad faith. As explained in the Motion, most, if not all, of those factors apply in this case and weigh in favor of a finding of bad faith. In this case, there are various indicia that Debtor is acting solely for the benefit of insiders and contrary to the best interests of creditors and that it filed for bankruptcy merely to forestall the loss of the Property. Secured Creditor has established the existence of a genuine issue concerning Debtor's lack of good faith and the Debtor must therefore meet its burden of proving good faith by a preponderance of the evidence. An unsupported denial is not sufficient to meet this burden.

**D.    Secured Creditor's Interest in the Property is Not Adequately Protected**

While the Debtor asserts that the Secured Creditor is receiving all of the rental income from the operation of the Property, this is not accurate. The Receiver is retaining any excess rents in its receivership account. No monies have been distributed to the Secured Creditor.

**E.    Debtor has No Reasonable Probability of Confirming a Plan**

As detailed in the Motion, Debtor has no reasonable chance of reorganization because it will not be able to confirm a plan. Debtor's proposed plan of reorganization cannot garner consent from an "impaired" class as Classes 2 through 5 are artificially impaired[2], and Class 6 will not accept the Plan as the Secured Creditor holds by far the majority of the class once insider claims are removed. The Plan also violates the absolute priority. Debtor's primary response to this argument is that such issues should not be considered until the plan confirmation stage. Secured Creditor submits that, given the overlap in these issues, the Court should continue the hearing on the Motion so that it may be considered by the Court at the same time as the plan of reorganization.

The one issue presented in the Motion that should be addressed at this juncture is the request that the Court find that the Debtor's case is a single-asset realty case under section 101(51B) of the Bankruptcy Code and subject to the requirements of section 362(d)(3). The Debtor did not address this point in its opposition.

---

[2] Interestingly, in the Opposition, Debtor briefly discusses the claims in Classes 2 through 5 of its Plan, which relate to loans on four trucks. Debtor argues that the Receiver has not had any use for the trucks because he has used outside maintenance staff. By contrast, the Debtor submits that it would need the trucks to maintain the Property itself. The Receiver has confirmed that this is not the case. In fact, the Receiver uses on-staff maintenance personnel and has never required the use of the four trucks. Perhaps more importantly, the Debtor has not revealed who has had possession of the trucks since the appointment of the receiver or why they were not turned over to the receiver.

4

DM3\1941105.2 R1501/00047

III.    **<u>CONCLUSION</u>**

Secured Creditor respectfully requests that the Court:  (i) enter an order finding that the Debtor's case is a single-asset realty case under 11 U.S.C. § 101(51B) and is subject to the single asset real estate requirements set forth in 11 U.S.C. § 362(d)(3); (ii) enter an order continuing the hearing on the remainder of the Motion such that it will be heard during the hearing on plan confirmation; and (iii) grant such other relief as is just and proper.

DATED:  October 18, 2011                    DUANE MORRIS LLP


                                            By:   /s/ Holly S. Stoberski
                                                  Holly S. Stoberski (SBN 5490)
                                                  Attorneys for Secured Creditor
                                                  WBCMT 2006-C27 PLUMAS STREET, LLC

5

DM3\1941105.2 R1501/00047