LOUIS M. BUBALA III, ESQ.
State Bar No. 8974
ARMSTRONG TEASDALE LLP
50 W. Liberty Street, Suite 950
Reno, NV 89501
Telephone: 775-322-7400
Facsimile: 775-322-9049
Email: lbubala@armstrongteasdale.com

Proposed Counsel for Terrence S. Daly as Receiver

ELECRONICALLY FILED ON
**November 1, 2011**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

TEE INVESTMENT COMPANY, Limited Partnership, dba LAKERIDGE APARTMENTS,

Debtor.

Case No.: BK-N-11-50615-BTB

Chapter 11

**VERIFIED MOTION OF RECEIVER TO USE CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE TO REPLACE ROOFS, MAKE REPAIRS AND HANDLE DEFERRED MAINTENANCE ON APARTMENT BUILDINGS**

Hearing Date: OST Requested
Hearing Time: OST Requested

Terrence S. Daly, in his capacity as court-appointed receiver ("Receiver"), by and through proposed counsel, Armstrong Teasdale LLP, for his Motion, states:

### INTRODUCTION

1. The Receiver, charged with management of Debtor's apartment complex, seeks court authority to expend $150,000 in Estate funds to: replace roofs on 3 buildings owned by Debtor, handle deferred maintenance on buildings, fix roof leaks and maintain a contingency fund of $15,000 (included in the $150,000) to address issues that are likely to occur when the repairs, maintenance and replacements are undertaken. The secured lender agrees with the expenditure for this work.

2. The Receiver brings this motion now so he can commence the work before the winter. Debtor contests the motion on grounds that the work is not necessary at all, and it is not necessary now. Debtor is incorrect on both points. The Receiver spent significant time and resources dealing with leaks at the property last winter. He did not immediately perform the work earlier this year, as it

was possible the property would be sold or foreclosed. When neither event occurred, the Receiver exercised his best judgment in hiring a roofing consultant. The consultant recommended significant remediation as discussed below. The Receiver proceeded to solicit bids and selected a contractor to perform the work. Thus, the Receiver seeks the bankruptcy court's approval to spend the funds and proceed with the repairs. The secured lender agrees with the use of cash collateral to make the repairs and replacements suggested.

## BACKGROUND

**A. Bankruptcy Filing**

3.  On March 1, 2011, TEE INVESTMENT COMPANY, LIMITED PARTNERSHIP, d/b/a Lakeridge Apartments ("Debtor"), filed a petition under Chapter 11 of the Bankruptcy Code.

**B. Apartment Buildings Debtor Owns are Subject to a Receivership**

4.  Debtor is the owner of certain apartment buildings and personal property at 6155 Plumas Street in Washoe County, Nevada (the "Apartment Buildings"). Prior to Debtor's seeking relief under the Bankruptcy Code, Judge Janet Berry, of the Second Judicial District Court of the State of Nevada and for the County of Washoe (the "State Court") entered an Order Appointing Receiver and Granting Preliminary Injunction (the "State Court Receiver Order").

5.  The State Court Receiver Order:

(a)  Appointed Terrence S. Daly as receiver to take possession of the Apartment Buildings (par. 1);

(b)  Imposed upon the Receiver the duty of caring for the Apartment Buildings and incurring expenses necessary for that care (par. 6c);

(c)  Allows the Receiver to expend money to operate and preserve the Apartment Buildings (Par. 10);

(d)  Allows the Receiver to purchase materials, supplies, and services reasonably necessary to administer the Apartment Buildings (Par. 14b(2)); and

(e)  Authorizes the receiver to do all things, and incur all risks and obligations

ordinarily done or incurred by owners, managers and operators of businesses and property similar to the Apartment Buildings, as well as to make capital improvements with court approval (Par. 14c).

6. On May 13, 2011, this Court entered an Order Granting Motion for Entry of Order Pursuant to 11 U.S.C. § 543(d)(1) Maintaining Terrence S. Daly as Custodian in Possession and Control of Debtor's Real Property, and Excusing Custodian from Compliance with 11 U.S.C. §§ 543(a) and (b) (the "Bankruptcy Court § 543 Order").

7. The Bankruptcy Court § 543 Order specifically:

(a) Allows the Receiver to "continue in possession, custody and control of the property comprising the receivership estate, and of all proceeds, product, offspring, rents, or profits from such property, subject to the terms and conditions of the [State Court Receiver Order];" and

(b) Authorized the receiver to "do all other things authorized by the [State Court Receiver Order]."

C. **Roof Replacement, Repairs, Maintenance Necessary**

8. The Apartment Buildings were in receivership last winter. Prior to December 2010, there were only minor issues with the roofs. Beginning in December, major leaks sprung in many of the roofs of the 18 buildings comprising the Apartment Buildings. Roofs could not be replaced that time of year, as gravel on the roofs freezes and the roofs cannot then be removed.

9. Due to the cold's preventing roof replacement, last winter, the Receiver employed professionals to tarp the roofs and patch leaks as and when they occurred, but the Apartment Buildings suffered damage to interior ceilings that had to be replaced in certain instances.

10. The Receiver contemplated in April 2011 making various repairs and replacements of roofs, but decided that the significant expenditures could be postponed until the fall (and the Apartment Buildings might be sold in the interim) when the Receiver would bring in a professional to further explore alternatives.

11. In August 2011, the Receiver was informed of, and explored, a cheaper alternative of employing foam sealant to repair and protect the roofs for several years, but then learned from his

consultant, Kelleher Boyd & Associates ("Kelleher Boyd") that this was not a practical solution for the Apartment Buildings.

12. Kelleher Boyd then explored alternatives. Despite best efforts, Kelleher Boyd experienced several delays in bringing roofers and others into the Apartment Buildings and generating a Roof Inspection & Condition Survey dated September 15, 2011 (the "Kelleher Report"), attached as **Exhibit 1**.

13. Following receipt of the Kelleher Report, in carrying out his duties under the Receiver Orders, from mid-September until mid-October, the Receiver contacted various roofing companies about replacing the roofs, and handling deferred maintenance and repairs as suggested in the Kelleher Report. The Receiver's efforts culminated in his receipt of a proposed Roofing Services Contract with P R S of Nevada Ltd. (the "Contract"), attached as **Exhibit 2**. The Contract incorporates replacement of 3 of the 7 roofs recommended by Kelleher Boyd and other repairs and deferred maintenance to make it through the winter without major leaks and other problems.

14. If the Contract is not executed and work on the replacements, repairs and maintenance set forth therein not begun prior to the first major snow storm, then roof replacements will not be possible this winter and roof leaks will simply have to be patched as they occur. However, further damage to ceiling interiors will occur, inhabitants of many of the apartments will be displaced or greatly inconvenienced and will abate their rent and the significant amounts spent on patching leaks and battling with tenants will have been lost as the roofs will still need to be replaced. Replacing the roofs now will avoid thousands of dollars of patching costs and suits with tenants concerning rent abatement.

15. The State Court Receiver Order authorizes emergency expenditures of funds. Further, use of cash collateral is allowed in Bankruptcy Cases: (a) with approval of the lender with an interest therein; and/or (b) on an interim basis after an initial hearing.

**D. Legal Authority**

16. In addition to the express terms of the Receiver Orders, pursuant to 11 U.S.C. § 363(b) and (c), a Trustee is authorized to use sell or lease property of the Debtor's Bankruptcy Estate,

including cash collateral, with consent of the lender with an interest therein and/or on an interim basis after prompt hearing thereon.

17. Pursuant to 11 U.S.C. § 105(a), the Court may enter any order necessary to carry out provisions of Title 11; or to enforce or implement its prior orders, including the Bankruptcy Court § 543 Order.

18. The Receiver proposes to pay for the materials and services set forth in the Contract from rents generated by the Apartment Buildings, that are cash collateral of WBCMT 2006-C27 Plumas Street, LLC ("Lender") pursuant to § 363(a) of the Bankruptcy Code. Lender consents to use of its cash collateral for such purposes and supports this Motion.

WHEREFORE, Terrence S. Daly, Receiver, prays that this Court enter an Order authorizing him to enter the Contract and use cash collateral to pay for the materials and services referenced therein; and granting the Receiver such additional relief as is just.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 1 day of November, 2011.    By: _____
                                                  TERRENCE S. DALY

Respectfully Submitted,                 ARMSTRONG TEASDALE LLP

Dated this 1st day of November, 2011    By: /s/Louis M. Bubala III
                                            Louis M. Bubala III, Esq.

                                        Proposed Counsel to Terrence S. Daly
                                        as receiver